340 So.2d 10 (1976)
Robert SYLAR
v.
STATE of Mississippi.
No. 49439.
Supreme Court of Mississippi.
November 30, 1976.
Harry L. Kelley, Jackson, Edward T.M. Garland, Frank Joseph Petrella, Mark J. Kadish, Atlanta, Ga., for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before INZER, SMITH and BROOM, JJ.
SMITH, Justice, for the Court:
The indictment against Robert Sylar charged that he "did then and there wilfully, knowingly, unlawfully and feloniously sell to Louis Guirola, a person, ... controlled substance without authority of law, to-wit: Marijuana, ..." On that indictment he was tried and convicted in the Circuit Court of Hinds County and sentenced to serve a term of ten years in the penitentiary.
Of the several matters assigned and argued as requiring reversal of Sylar's conviction it is necessary to notice only one: It is contended on Sylar's behalf that Sylar was entitled to an instructed verdict of acquittal because the evidence showed that he had been entrapped by agents of the state.
At the time of the alleged offense Robert Sylar was a young man, recently married, who had been educated at Mississippi State University and Louisiana State University. He was regularly employed by The Water Department of the City of Jackson as night chemist at the City Water Works. There is no evidence in the record showing that Sylar had a previous criminal record. He had no history of trafficking in drugs nor was it established that he had any predisposition to do so. Reduced to its essentials the case was this:
An undercover agent employed by the Mississippi Narcotics Bureau, who was a "friend" of Sylar, asked him to deliver a one pound package of marijuana, which the *11 agent had in his possession, to another person, who also was an agent of the Mississippi Narcotics Bureau. After declining this request on several occasions Sylar consented. The "friend" then supplied Sylar with the package of marijuana and instructed him to deliver it to the second agent and to collect from the latter $120. Sylar did this and the second agent "paid" him the $120 from state funds "appropriated for the purpose", Sylar having returned this to the first agent's residence. Stated more succinctly, the marijuana was supplied by the State of Mississippi through its agent, who procured its delivery by Sylar to another agent of the state who gave Sylar the $120 in state funds, returned by Sylar to the first agent.
The above facts are undisputed in their essential particulars. The first agent did not testify. The testimony of the second agent to the effect that: he tried unsuccessfully to get Sylar to recede from the $120 which the first agent had instructed Sylar to collect, that he discussed the sale with Sylar "in depth," told Sylar that the quality of the marijuana was inferior, that, he said, Sylar agreed that it was and said that in the future it would be better, that Sylar knew that the package contained marijuana, does not alter the fact that the transaction was a fiction and merely "a play or charade" and that no actual sale took place. Sylar was made a mere conduit to hand marijuana supplied him by one state agent to another state agent and receive from the latter state money returned to the original state agent.
The state relies upon Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), as requiring the affirmance of the conviction. In Hampton, the petitioner was convicted of distributing heroin in violation of 21 U.S.C. § 841(a)(1). The opinion in Hampton makes it clear that the idea originated with Hampton who initiated the proposal to sell drugs. It all began with Hampton's statement to an undercover agent that he needed money and knew where he could get some heroin. This led through various steps to the eventual transactions which were the basis of Hampton's conviction. In Hampton, the Court stated that the defense of entrapment was rejected because a predisposition of the defendant to commit the crime was shown and that misconduct of the government agents was not sufficient to support the defense. The Court said that governmental misconduct was not the basis upon which the defense of entrapment should rest and repeated its view that the conviction should be upheld because it was based upon evidence justifying a finding that there was a predisposition on the part of the defendant to commit the crime and that, in such a case, entrapment was not a valid defense.
The Court, in the controlling opinion in Hampton, said: "it is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." The Court said that the defense of entrapment was not, therefore, available to Hampton who relied upon a statement in United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."
The case now before this Court is essentially different on its facts from that in Hampton. In Hampton the original idea and proposal to commit the crime came from Hampton himself. Here Sylar did no more than yield to the importunities of one state agent to deliver marijuana supplied by the state to another state agent.
Since the decision in Hampton, the New Jersey Supreme Court has had occasion to deal with a case in which the defense of entrapment was interposed. In State v. Talbot, 71 N.J. 160, 364 A.2d 9 (1976), the New Jersey Supreme Court stated this rule:
This appeal poses the issue whether entrapment is established as a matter of law if an informant, while acting in concert with an undercover police officer, but unknown to the officer and contrary *12 to instructions, supplies the defendant with heroin for the purpose of then arranging a sale of the heroin by defendant to the undercover officer, which sale is then consummated. We hold that it is. (364 A.2d at 10).
In the New Jersey case, the Court reached its conclusion after reviewing the United States Supreme Court's decision in Hampton and held that a defendant's predisposition to commit the crime does not preclude the defense of entrapment where the proof established that the government was both the supplier and buyer of contraband and in such a case entrapment is established as a matter of law.
Talbot was reversed and, although remanded for determination of a certain factual conflict on a material point, the Court said:
We hold that where an informer or other agent generally acting in concert with law enforcement authorities, furnishes a defendant with heroin for the purpose of then arranging a sale of the heroin by the defendant to an undercover officer, which sale is then consummated, defendant has been entrapped as a matter of law even though predisposition to commit the crime may appear, and notwithstanding that the furnishing of the heroin is unknown to and contrary to the instructions of the law enforcement authorities. Those authorities, having set the agent to work in enticing the defendant, the prosecution should bear the onus of the means selected by the agent. See State v. McKinney, 108 Ariz. 436, 501 P.2d 378, 381-382 (1972); State v. Boccelli, 105 Ariz. 495, 467 P.2d 740, 742 (1970); People v. Strong, 21 Ill.2d 320, 172 N.E.2d 765, 768 (1961); State v. Overmann, 220 N.W.2d 914, 916-917 (Iowa Sup.Ct. 1974); Jones v. State, 285 So.2d 152, 159 (Miss. Sup.Ct. 1973); State v. Sainz, 84 N.M. 259, 501 P.2d 1247, 1248 (Ct.App. 1972); Lynn v. State, 505 P.2d 1337, 1344 (Okla.Cr. App. 1973). But see Proposed New Jersey Penal Code § 2C:2-12 (1971). (364 A.2d at 13).
The New Jersey Supreme Court quoted from its decision in State v. Dolce, 41 N.J. 422, 431, 197 A.2d 185 (1964) as follows:
As we said in Dolce, supra, 41 N.J. at 431, 197 A.2d at 190, `courts will not permit their process to be used in aid of a scheme for the actual creation of a crime by those whose duty it is to deter its commission.' However, this does not mean that the police may not use artifice to trap the unwary criminal. Rather, entrapment is concerned with the manufacturing of crime by the police and the ensnaring of unwary innocents. (364 A.2d at 11).
In the New Jersey case the Court pointed out that the decisions of the United States Supreme Court on the subject were not predicated upon constitutional grounds and said:

Hampton and the other Supreme Court decisions mentioned above were concerned with construction of the federal statutes and to some extent with the supervisory power of the federal courts to bar federal convictions because of "outrageous" police conduct. Such rulings, however, are not controlling on state courts which are free to formulate and establish the contours of the defense of entrapment for their own jurisdictions. (364 A.2d at 12).
In Jones v. State, supra, cited by the New Jersey Supreme Court in State v. Talbot, supra, the factual situation bears a marked resemblance to that in the case at bar. In Jones, Justice Sugg delivered the opinion of this Court in which he collated and exhaustively reviewed the authorities dealing with the defense of entrapment. Speaking for this Court, Justice Sugg concluded as follows:
In Sorrells, supra, [Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932)] the Court addressed itself to the evidentiary problems in cases where the defense of entrapment was interposed. In Sorrells the Court stated:
Objections to the defense of entrapment are also urged upon practical grounds. But considerations of mere convenience *13 must yield to the essential demands of justice. The argument is pressed that if the defense is available it will lead to the introduction of issues of a collateral character relating to the activities of the officials of the government and to the conduct and purposes of the defendant previous to the alleged offense. For the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises. Grimm v. United States, 156 U.S. 604, 15 S.Ct. 470, 39 L.Ed. 550, supra. The predisposition and criminal design of the defendant are relevant. But the issues raised and the evidence adduced must be pertinent to the controlling question whether the defendant is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials. If this is the fact, common justice requires that the accused be permitted to prove it. The government in such a case is in no position to object to evidence of the activities of its representatives in relation to the accused, and if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense. (287 U.S. at 451, 53 S.Ct. at 216, 77 L.Ed. at 422).
Although the rules announced in the above cases are not binding in state prosecutions under state law, we are of the opinion that the above quotation from Sorrells pertaining to the scope of proof is well reasoned, has a sound basis in logic and is consistent with the holding of our cases pertaining to the defense of entrapment, particularly Laughter and Smith, supra.

The defendant was entitled to a directed verdict and we therefore reverse and discharge the defendant. (285 So.2d at 159-160).
We adhere to the conclusions reached in Jones and hold that Sylar's request that the jury be instructed peremptorily to find him not guilty should have been granted. The conviction is reversed and Sylar is discharged.
REVERSED AND APPELLANT DISCHARGED.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.