534 So.2d 557 (1988)
Luke MOORE
v.
STATE of Mississippi.
No. 57729.
Supreme Court of Mississippi.
November 23, 1988.
Robert H. Broome, Batesville, Thomas J. Lowe, Jr., Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
ZUCCARO, Justice, for the Court:
On May 16, 1986, appellant, Luke Moore, was convicted by a jury of possession of more than one kilogram of marijuana with intent to sell pursuant to Miss. Code Ann. § 41-29-139(a)(1) (1972). Moore was thereafter sentenced to serve a term of twenty-four (24) years in the custody of the Mississippi Department of Corrections and to pay a fine in the amount of $40,000.00, all in proceedings had in the Circuit Court of Panola County, Mississippi.
Luke Moore appeals asserting the lower court's refusal to grant a directed verdict as the only error. Moore points to the fact that the prosecution furnished and sold the marijuana to him. This, he argues, is entrapment as a matter of law and, therefore, the court should have directed a verdict of acquittal.
The facts surrounding the drug transaction are not in dispute. The State did, in fact, supply the marijuana. The state's plan was to sell a forty-pound (40 lb.) bale of marijuana to Luke Moore, and once the sale had been consummated, to arrest him for possession with intent to sell. To enact the plan, the State arranged for an informant to offer the marijuana to Moore and *558 then to arrange a meeting in order for Moore to pick up and pay for the marijuana. At the time of the exchange, the agents of the Mississippi Bureau of Narcotics would be present to arrest Moore. The plan went as intended and Moore was arrested.
Luke Moore took the witness stand in his own behalf. He testified that he graduated from Coffeeville High School and then joined the U.S. Army where he spent two years in Germany. He also testified that he attended University of Mississippi where he only needed six hours to graduate with a psychology degree.
Moore testified that the money he had to purchase the marijuana was his life savings he had saved while in the service and from jobs he had. Moore also admitted that he had been convicted (pleaded guilty) in 1977 of possession of marijuana. He said that he had not been involved in drugs again until the day he was arrested.
Moore moved for a directed verdict and thereafter requested a peremptory instruction, asserting that since the State of Mississippi provided the marijuana, he was entrapped as a matter of law. The trial court denied the motion, and, as well, his post-trial motions for acquittal, and Moore appeals.
Our law regarding the defense of entrapment has become confused and convoluted through various cases over the years. Consideration of the facts of this case and the law in this area suggest the need for clarification of this body of law which we attempt to provide.
It is necessary that we review the relevant cases. In Tribbett v. State, 394 So.2d 878, 882 (Miss. 1981), we said:
The usual entrapment case which arises under Mississippi law involves a confidential informant or police officer who originates the sale of contraband by supplying it to the accused, who then, acting in complicity with the confidential informant or police officer, sells or disposes of it to another officer or person who initiates the prosecution.
422 So.2d at 291. See also Epps v. State, 417 So.2d 543 (Miss. 1982); Torrence v. State, 380 So.2d 248 (Miss. 1980); and Sylar v. State, 340 So.2d 10 (Miss. 1976). However, the foregoing was not the scenario in the case sub judice. This case simply involved a sale of marijuana by the Bureau to Moore, the defendant. The bureau did not arrange to purchase the marijuana from the defendant once the defendant was in possession of the marijuana.
We have quoted State v. Talbot, 71 N.J. 160, 364 A.2d 9 (1976) with approval on more than one occasion. Barnes v. State, 493 So.2d 313, 316 (Miss. 1986); Torrence v. State, 380 So.2d 248, 250 (Miss. 1980); Sylar v. State, 340 So.2d 10, 11-12 (Miss. 1976). In Talbot, as cited in Barnes v. State, 493 So.2d 313, 316 (Miss. 1986), the New Jersey Supreme Court held that:
When an informer or other agent generally acting in concert with law enforcement authorities, furnishes a defendant with heroin for the purpose of arranging a sale of the heroin by the defendant to an undercover officer, which sale was then consummated, defendant was entrapped as a matter of law, even though predisposition to commit the crime may appear and notwithstanding that the furnishing of the heroin was unknown to and contrary to the instructions of the law enforcement authorities.
Barnes v. State, 493 So.2d 313, 316 (Miss. 1986). Talbot suggests that, to have entrapment as a matter of law, the prosecution must not only provide the illegal contraband but also arrange the subsequent sale of the contraband by the defendant to another agent of the state.
We have followed Barnes and Talbot too blindly in Kemp v. State, 518 So.2d 656 (Miss. 1988), for some now read our law that the defense of entrapment is made as a matter of law when state agents furnish the contraband. In this light we need to reconsider the basics. Entrapment occurs when state authorities induce an individual to commit an offense he was not otherwise predisposed to commit. Where entrapment is pled as a defense, evidence of predisposition is always relevant and, hence, always admissible. See Sayre v. State, 533 So.2d 464, 466 (Miss. 1988); Rule 401, Miss. *559 R.Ev. This is because the very idea of entrapment suggests that the person would have never committed a crime had he not been persuaded or otherwise enticed. Barnes v. State, 493 So.2d 313, 315 (Miss. 1986).
In the cases cited above, we find another factor emerging: misconduct on the part of law enforcement authorities. An indication of an excessive degree of involvement on behalf of the state might be the situation where the state was both supplier and purchaser of contraband. However, there may be other situations where the criminal design would be that of the state rather than the defendant simply because the state was so inexorably intertwined that the crime would not have been committed but for its involvement. Jones v. State, 285 So.2d 152 (Miss. 1973) (agent placed marijuana near a telephone pole and asked defendant to retrieve it and sell it to another undercover agent). Sylar v. State, 340 So.2d 10 (Miss. 1976) (the marijuana, which was the subject of the arrest, was supplied by the State of Mississippi through its agent who procured its delivery by Sylar to another agent of the state who gave Sylar $120 in state funds in return for the marijuana). Torrence v. State, 380 So.2d 248 (Miss. 1980) (same). Epps v. State, 417 So.2d 543 (Miss. 1982) (a state agent supplied defendant with cocaine and then sent another agent to purchase it). Daniels v. State, 422 So.2d 289 (Miss. 1982) (agent left a paper bag of pills with defendant as "collateral" for a "loan" he took from defendant. The agent returned with another agent who gave the defendant $200 to pay back the "loan". Then the agents arrested defendant for the sale of a controlled substance.).
Our prior entrapment cases do not fit into nice, neat, mutually-exclusive categories  subjective or objective  but reflect differing shades of gray along a continuum. At the one end are those cases in which state involvement is minimal and where the case truly turns on the defendant's predisposition. At the other end are those cases where state involvement is so great that it does and ought overcome slight evidence that the accused had some predisposition to commit the crime. See Barnes v. State, 493 So.2d 313, 316 (Miss. 1986); Sylar v. State, 340 So.2d 10, 12 (Miss. 1976). This leads to realization that our cases suggest two themes quite distinct each from the other: the defendant's predisposition, and misconduct on the part of law enforcement. The latter is a matter that ought to be kept separate and distinct from our law of entrapment.
Where the defendant claims entrapment, we inquire first whether the offense was induced by a government agent; and, second, whether the defendant was predisposed to commit the type of offense charged. A defendant is considered predisposed if he is "ready and willing to commit the crimes such as are charged in the indictment, whenever opportunity was afforded." If the accused is found to be predisposed, the defense of entrapment must fail.
Predisposition and state inducement are essentially questions of fact. An entrapment defense will generally present matters to be submitted to the jury on proper instructions. See King v. State, 530 So.2d 1356, 1358-59 (Miss. 1988); Phillips v. State, 493 So.2d 350, 354 (Miss. 1986). Where the jury resolves the point against the defendant, he is generally out of luck on appeal. On the other hand, having in mind our limited scope of review of jury verdicts, where the offense has in fact been induced by an agent of the state and where the accused, prior to the inducement, was not predisposed to commit the type of offense charged, entrapment is shown and the defendant must be discharged. See, e.g., Barnes v. State, 493 So.2d 313 (Miss. 1986); Sylar v. State, 340 So.2d 10 (Miss. 1976), and Jones v. State, 285 So.2d 152 (Miss. 1973).
That the State furnished the contraband is a point of evidentiary value only. Where shown, such evidence does not inexorably lead a successful entrapment defense. Rather, depending upon the facts and circumstances of the particular case, state-supplied contraband merely goes to negate the notion that, prior to the inducement, *560 the accused was predisposed to commit the offense.
The point to be emphasized is that we are concerned with but a single defense: entrapment[1]; that predisposition is always an issue and that evidence of predisposition (or the lack thereof) is always relevant. The trier of fact should be charged to weigh and balance state involvement in procuring commission of crime versus the accused's predisposition. In many, if not most, cases both will be present in some degree. Where evidence of the accused's predisposition is weak, as will often be the case where there is heavy state involvement, the entrapment defense generally ought be sustained. On the other hand, where there is powerful evidence of an accused's independent predisposition, substantial state involvement may be overcome and the entrapment defense fail.
All of this leads to the second theme, that of governmental misconduct. We are concerned here with the premise best put by Justice Holmes dissenting in Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928).
... [F]or my part I think it a less evil that some criminal should escape than that the government should play an ignoble part.
277 U.S. at 470, 48 S.Ct. at 575. What we are saying is that the state's participation can become so offensive that the only appropriate antidote is to discharge the accused, this notwithstanding the fact that he may have been predisposed and that his entrapment defense may otherwise fail.
Notwithstanding the defendant's predisposition, we declare that he must be discharged where the state has employed methods of persuasion or inducement which create a substantial risk that the criminal offense will be created by persons other than those ready and willing to commit it. Beyond that, the defendant must be discharged where state officials engage in conduct outrageous or shocking to common sensibilities, for we are not yet ready to hold that the end of reducing drug trafficking may be secured by any means.
When these premises are applied to the case before us today, two points become apparent. First, Moore was ready, willing and able to pay $12,000.00 for a forty-pound bale of marijuana. This suggests Moore's substantial predisposition to possess marijuana with intent to sell. Second, state inducement was slight. It took but a lone phone call to get Moore to snap at the bait.
The evidence is uncontroverted that Moore contacted Holmes, an informant, in reference to the drug transaction more than one time to set up the plans for the drug transaction; that Moore drove from Memphis to Batesville to discuss the deal prior to making the final plans; that Moore has a previous conviction; that Moore expressed familiarity with different varieties of marijuana; specifically, "Columbian,"; that Moore was in possession of two (2) handguns and that there was no evidence that the undercover agents exerted any pressure on Moore to participate. Nor was this an instance where the state was both supplier and purchaser. These facts constitute more than enough evidence to render the jury's finding of guilt beyond reversal. By the same token, the evidence suggests that Moore was indeed predisposed to possess marijuana with intent to sell. The Circuit Court was correct in its refusal to direct a verdict of acquittal.
AFFIRMED.
PRATHER, ROBERTSON and GRIFFIN, JJ., concur.
SULLIVAN, J., dissents with separate written opinion joined by ROY NOBLE LEE, C.J.
*561 ANDERSON, J., dissents with separate written opinion joined by ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and SULLIVAN, J.
HAWKINS, P.J., not participating.
SULLIVAN, Justice, dissenting:
I dissent on the same grounds as the dissent in Sayre v. State, 533 So.2d 464 (Miss. 1988).
In my view the majority goes even further here than they did in Sayre and now sanctions any amount of police misconduct if there is evidence of predisposition on the part of the defendant. In a balancing of evils we have come down on the side of sanctioning criminal conduct by police authorities. I would not do so.
I disagree with the majority's treatment of Kemp v. State, 518 So.2d 656 (Miss. 1988). In my view, Kemp follows Barnes and Talbot logically, and not "blindly" as the majority suggests. Kemp represents good law, the majority's treatment of it notwithstanding. If the majority indeed feels that Kemp was wrongly decided, I suggest that it say expressly what it has done in fact; namely, overrule Kemp, instead of leaving Kemp's interpretation of Barnes and Talbot in ambiguo.
ROY NOBLE LEE, C.J., joins this opinion.
ANDERSON, Justice, dissenting:
With respect, I dissent. The majority decides that "[w]here entrapment is pled as a defense, evidence of predisposition is always relevant and, hence, always admissible." This decision flies in the face of our precedent. We have held that state misconduct can be so egregious that defendant's subjective state of mind, his pre-disposition, is irrelevant. In such circumstances, we find, as a matter of law, that the defendant was entrapped. We have so held in cases involving convictions of the sale of illegal drugs where the drugs were both supplied and then bought by state agents. See, Epps v. State, 417 So.2d 543 (Miss. 1982); Torrence v. State, 380 So.2d 248 (Miss. 1980) and Sylar v. State, 340 So.2d 10 (Miss. 1976). Importantly, we have also found entrapment as a matter of law where the defendant's conviction is for possession of illegal drugs and the state supplied those drugs. Kemp v. State, 518 So.2d 656 (Miss. 1988) (defendants convicted of conspiracy to possess, discharged) and Barnes v. State, 493 So.2d 313 (Miss. 1986) (same).
In Barnes, supra, we noted:
There is a decided difference between inducing a person to commit an unlawful act and furnishing contraband with which to commit such an act, and in setting the stage to catch an accused in the execution of criminal designs of his own conception.
Barnes, 493 So.2d at 315.
I have no difficulty accepting that a jury issue is created where the state furnishes the drugs it later uses to prosecute a defendant for unlawful sale of drugs to a third person who is not a state agent. I cannot understand, however, the distinction made by the majority between the Sylar/Kemp line of cases and the case sub judice. There is no basis in reason or under our law for the distinction.
I would, therefore, reverse, render and discharge the defendant.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and SULLIVAN, J., join in this dissent.
NOTES
[1] The law of entrapment is not without controversy. One of the controversies is whether the legal standards should be objective or subjective, and there is much to be said for and against each approach. See 1 LaFave and Israel, Criminal Procedure 5.2, pp. 415-421 (1984) (Mississippi is generally regarded in the subjective camp). This debate proceeds from the premise that there is but one defense of entrapment, the problem being how best to state the legal standards for that defense. I am not aware of any court, before today, which has decreed the existence of two different kinds of entrapment: subjective and objective.