BRIDGES, C.J.,
for the Court:
¶ 1. Larry Lee was convicted in the Circuit Court of Hinds County of possession of cocaine and was sentenced to a term of three years in the custody of the Mississippi Department of Corrections. Aggrieved, Lee argues on appeal that the trial court erred in denying his motion for directed verdict based upon the undisputed evidence that a confidential informant supplied the drugs that were later purchased by law enforcement, and that he was entrapped as a matter of law. Finding no *1098 merit to the issue raised, we affirm the judgment and sentence of the trial court.
FACTS
¶ 2. On or around September 19, 1996, Detective Wallace Jones, an undercover narcotics agent, accompanied by a confidential informant, went to Utica, Mississippi to purchase $1200 worth of crack cocaine from Larry Lee. Jones was wired with a body transmitter which allowed a surveillance team to listen to the conversation. Jones testified that he and the informant drove onto a dirt road and a gray Chevy pickup truck pulled up. Jones stated that when Lee gave him the bag of cocaine, he handed him the $1200. However, Lee testified that the informant walked up to his pickup truck, received the package containing crack cocaine, and Jones paid $1200 for it.[1] Lee stated that Jones attempted to pay him, but that he directed that the money be given to Wilson. The package was later field tested and determined to be crack cocaine. Lee was then indicted and charged with the sale of cocaine pursuant to Miss. Code Ann. § 41-29-139. The jury was given instructions for the sale of cocaine, possession of cocaine, and was instructed on the issue of entrapment. Lee was convicted of possession of cocaine and sentenced to serve three years in the Mississippi Department of Corrections. Lee’s motion for judgment notwithstanding the verdict was denied, and he has now perfected this appeal.
ARGUMENT AND DISCUSSION OF LAW
¶ 3. Lee argues on appeal that the trial court erroneously denied his motion for a directed verdict since there was undisputed evidence of entrapment. Lee contends that the State failed to rebut or impeach his testimony concerning the confidential informant’s role in supplying the drugs even though the informant was available to testify. Furthermore, Lee argues that there was no showing that he had a predisposition to commit the offense. Lee contends that this was a classic reverse/sale operation that should be reversed since the supreme court has repeatedly held that a reverse/sale operation embraces all the elements and requirements for entrapment.
¶ 4. The State argues that Lee’s testimony was contradicted by the testimony of Officer Jones, and that the officer’s testimony along with the tape recorded playing of the transaction, created a conflict in the evidence that the jury was responsible for resolving. The State contends that Lee admitted to having the cocaine that he stated he gave to Wilson, and that this alone was sufficient in supporting his conviction. The State argues that Lee’s testimony was merely an effort at using his own testimony to establish entrapment, and this made the issue of entrapment a jury question. The State contends that the jury was properly instructed, and that there was evidence of Lee’s predisposition to sell and possess cocaine based upon the testimony and the admissions he made on cross-examination. We agree.
¶ 5. Lee’s post trial motion challenged the legal sufficiency of the evidence. In reviewing the legal sufficiency of the evidence, our authority to disturb the jury’s verdict is quite limited. Clayton v. State, 652 So.2d 720, 724 (Miss.1995). We consider the evidence in the light most consistent with the verdict. Id. The prosecution must be given the benefit of “all favorable inferences that may reasonably be drawn from .the evidence.” Id. We may not reverse unless one or more of the elements of the offense charged is such that reasonable and fair minded jurors could only find the accused not guilty. McClain v. State, 625 So.2d 774, 778 (Miss. *1099 1993). We review the ruling on the last occasion the challenge was made; in this case, the motion for judgment notwithstanding the verdict.
¶ 6. In the present case, Lee argues that he had proven a case of entrapment as his defense. Lee contends that when the trial court judge was presented with unim-peached, unrebutted testimony that the informant supplied cocaine to him which the law enforcement officer later purchased from him, he should have been acquitted by reason of entrapment.
¶ 7. Our law on entrapment is well-settled. It has been defined as “the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense.” Walls v. State, 672 So.2d 1227, 1229 (Miss.1996). The defense of entrapment is affirmative and must be proved by the defendant. Id. Before the defense can be raised, the defendant is required to show evidence of government inducement to commit the criminal act, and a lack of a predisposition to engage in the criminal act before contact with the government agents. Id. A defendant is considered predisposed if he is “ready and willing to commit the crimes such as are charged in the indictment, whenever opportunity was afforded.” Moore v. State, 534 So.2d 557, 559 (Miss.1988). If the accused is found to be predisposed, the defense of entrapment must fail. Id. Therefore, since Lee specifically testified that he had no predisposition to commit the crime with which he was charged, the trial court was obliged to submit the entrapment issue to the jury through proper instructions. This was done.
¶ 8. In his brief, Lee cites to Pulliam v. State, 592 So.2d 24 (Miss.1991), in which the Mississippi Supreme Court condemned the so-called “supply and buy” controlled substance transactions in which law enforcement officers both provide the accused with the controlled substance which they want him to sell and then provide him or her with the opportunity to sell it. In Pulliam, the court wrote:
In the drug enforcement area, we encounter from time to time an egregious form of entrapment wherein persons acting for the state both “supply the controlled substance to the accused” and then “buy”it from him. In a long line of cases, we have made clear that we regard this a form of official misconduct which must be condemned and that, in the absence of a substantial showing of the defendant’s predisposition for drug trafficking, the courts must acquit.
Pulliam, 592 So.2d at 26. In the Pulliam opinion, the Mississippi Supreme Court referred to Gamble v. State, 543 So.2d 184, 185 (Miss.1989), another “supply and buy” case, in which that court reversed the conviction of the appellant because the informant had given the appellant the marijuana which he later sold to a Mississippi Bureau of Narcotics undercover agent. Included in the Pulliam opinion was the following quote from the Gamble opinion:
Had the state rebutted the testimony of appellant [here Pulliam] by calling the [sic] McKee [here Self] or by some other credible evidence, the lower court properly would have declined to sustain the motion for directed verdict. However, where the evidence stands uncontradict-ed, undisputed and unimpeached, even though the jury may have not believed the appellant, that testimony stands and makes out the defense. In cases such as this, prosecutors must have rebuttal evidence at hand to refute such testimony.
Pulliam, 592 So.2d at 27 (quoting Gamble, 543 So.2d at 185). The court focused on “Gamble’s teaching that the defendant is entitled to discharge only where the evidence [of the accused’s entrapment] stands uncontradicted, undisputed, and unim-peached” by a “supply and buy” tactic. It is this Court’s finding that in this case Lee’s “supply and buy” claim was rebutted, disputed, and impeached. Deciding who was negotiating least with the truth was the jury’s task. As the Mississippi *1100 Supreme Court observed in Gandy v. State, 373 So.2d 1042 (Miss.1979):
Jurors are permitted, indeed have a duty, to resolve the conflicts in the testimony they hear. They may believe or disbelieve, accept or reject, the utterances of any witness. No formula dictates the manner in which jurors resolve conflicting testimony into findings of fact sufficient to support their verdict. That resolution results from the jurors hearing and observing the witnesses as they testify, augmented by the composite reasoning of twelve individuals sworn to return a true verdict. A reviewing court cannot and need not determine with exactitude which witness or what testimony the jury believed or disbelieved in arriving at its verdict. It is enough that the conflicting evidence presented a factual dispute for jury resolution.
Id. at 1045.
¶ 9. In the case at bar, Lee’s testimony was contradicted and disputed by the testimony of Jones as well as by Lee’s own admissions made on cross-examination. The State also presented a tape made of the transaction which was played for the jury and corroborated Jones’s testimony. In addition, Lee testified to transferring the cocaine “for a little change.” We agree with the State that Lee was predisposed to this crime in order to make some money for his efforts, and that Lee also admitted to having considered transferring the cocaine more than once.
¶ 10. It is clear that the jury chose to believe the testimony of the State’s witnesses over Lee’s testimony. Based on the above, and accepting all credible evidence consistent with Lee’s guilt as true, this Court finds that there was sufficient evidence to support the jury’s finding that Lee was not entrapped by the State.
¶ 11. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF POSSESSION OF COCAINE AND SENTENCE OF THREE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., DIAZ, LEE, AND THOMAS, JJ., CONCUR.
IRVING DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING AND SOUTHWICK, P.JJ., AND COLEMAN AND PAYNE, JJ.

. Lee testified that Wilson, the informant, told him that he had a cousin that sold drugs coming to town, and since Wilson did not want his cousin to know that he also sold drugs, he asked Lee if he would sell them to the cousin if he supplied them. Lee stated that he agreed to deliver the drugs to the cousin as a favor to Wilson.