757 So.2d 1053 (2000)
Troy EALY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00612-COA.
Court of Appeals of Mississippi.
March 21, 2000.
*1055 Edmund J. Phillips, Jr., Newton, P. Shawn Harris, Lake, Attorneys for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
EN BANC.
SOUTHWICK, P.J., for the Court:
¶ 1. Troy Ealy was convicted on two counts of sale of cocaine. His sole argument on appeal is that the court erred in not granting him a jury instruction on entrapment. We agree that the instruction should have been given. We reverse and remand for further proceedings.

FACTS
¶ 2. Mississippi Bureau of Narcotics Agent Mark Whatley testified that he and confidential informant Joe Dennis bought $40 worth of crack cocaine from Ealy on two separate occasions on the same day, July 24, 1997. Dennis, who had used cocaine with Ealy on previous occasions, went with Whatley to Ealy's house both times. On the first occasion, Dennis talked with Ealy at the front door and then brought him out to the car to meet Whatley. Ealy told Whatley to drive around the block. When Whatley and Dennis returned, Ealy gave Whatley two rocks of crack cocaine in exchange for $40. The second buy took place about an hour later when Whatley and Dennis returned. This time, Whatley gave Ealy $40 first, then Ealy disappeared and returned with two rocks of crack cocaine, which he wrapped in a napkin and gave to Whatley. Both times, Dennis wore a wire so the transactions could be monitored by two other state narcotics agents, Jimmy Nichols and Tony Shearer, who were waiting in a state vehicle down the street. In each case, according to Ealy's testimony, he kept a portion of the cocaine for his own use. Following each purchase, at a postbuy meeting, Whatley turned the cocaine over to Nichols for safekeeping. It was later tested at the state crime laboratory and determined to be crack cocaine.
¶ 3. At one point during the second transaction, Agents Nichols and Shearer pulled up at Ealy's house in their state car and spoke momentarily to Ealy, who later testified he knew Nichols to be a state narcotics agent. After the two agents left, Ealy resumed his transaction with Whatley.
¶ 4. The State acknowledged that sometime prior to these events, Agent Nichols had spoken to Ealy about helping with undercover purchases. Nichols testified that the discussion was preliminary and no agreement was made. On the other hand, Ealy testified that when he made the two sales to Whatley, he believed that he was acting as a confidential informant. He testified that when the informant Dennis approached Ealy at his house before the first sale, Dennis asked Ealy to help him out by making a drug buy for him. Dennis allegedly identified the buyer Whatley as an drug agent. Dennis denied this and testified that he had identified Whatley to Ealy as his nephew.
¶ 5. At the close of the evidence, Ealy submitted two jury instructions dealing with entrapment. The two instructions were as follows:
D-6: The Court instructs the Jury that should you find from the evidence that if the informant or government agent supplied the illegal drugs or the means to obtain illegal drugs to the defendant, then the defense of entrapment lies and you should find the defendant "Not Guilty."
D-7: The Court instructs the Jury that when a criminal design originated not with the accused, but is conceived in the mind of law enforcement officers, or persons acting under their advice or instructions, and the accused is by persuasion, deceitful representations, or inducement *1056 by officers or their agents, lured into the commission of a criminal act, the State is stopped from prosecution thereon.
If you find in this case that the criminal design originated not with the accused but was conceived in the mind of Law enforcement officers, or persons acting under their advice or instructions, and that the Defendant was, by persuasion, deceitful representations, or inducement by such officers or persons, lured into the commission of the criminal act of possessing or selling the illegal drug, you must find the defendant "Not Guilty."
After counsel presented argument, the court determined that both instructions should be denied.

DISCUSSION
¶ 6. Ealy contends that the denial of these two instructions was error because he presented sufficient evidence for the jury to consider the issue of entrapment. One authority that he cites permits lesser-included-offense instructions to be submitted to the jury only where there is an evidentiary basis for them in the record; that such instructions should be refused only where the evidence can only justify a conviction on the principal charge. Lee v. State, 469 So.2d 1225, 1230-31 (Miss.1985). The other precedent upheld the denial of a defense instruction on reasonable doubt because it unduly enhanced the testimony of the defendant and amounted to a comment on the weight of the testimony. Boone v. State, 291 So.2d 182, 186 (Miss.1974). These precedents do usefully focus us on the need for some evidence to support the instruction.
¶ 7. The supreme court has recognized that entrapment issues arise in two situations. Classic entrapment is when an innocent person with no prior criminal inclination is induced through persistent entreaties by undercover law enforcement agents to commit an offense. Jones v. State, 285 So.2d 152, 157 (Miss. 1973). Either a separate category, or just an extreme version of the classic case, is when law enforcement officers initially furnish and later purchase the contraband with which the accused commits the crime. When a supply-and-buy case is proven, the supreme court has found entrapment in part because of the overly intertwined involvement of the State in the entire transaction. Moore v. State, 534 So.2d 557, 559 (Miss.1988). Instruction D-6 was for such a case. There was no evidence to support that here. Thus D-6 was properly denied. D-7 is another matter.
¶ 8. The supreme court has explained when an entrapment instruction must be given:
Entrapment has been defined as `the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him for the offense.' The defense of entrapment is affirmative and must be proved by the defendant. If the defendant already possesses the criminal intent, and the request or inducement merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense. Before a defendant can raise the defense of entrapment, he or she is required to show evidence of government inducement to commit the criminal act and a lack of predisposition to engage in the criminal act prior to contact with government agents.
Hopson v. State, 625 So.2d 395, 399-400 (Miss.1993).
¶ 9. It is necessary for a defendant to show that the offense was induced by a government agent. He must also show that he was not "ready and willing" to commit such offenses whenever the occasion for doing so arose. Moore, 534 So.2d at 559. The presence of inducement and the absence of predisposition must both be shown.
¶ 10. Once the defendant makes out a prima facie case of entrapment, he *1057 becomes entitled to an instruction. Walls v. State, 672 So.2d 1227, 1230. The issue is not whether there was strong evidence to the contrary. It is whether there was some evidence upon which a reasonable juror could rely in support of the defense. We look at the evidence presented.

I. Government Inducement
¶ 11. The distinction that is important here is whether the State induced Ealy to sell cocaine or merely provided the opportunity. A defendant is not excused from selling contraband simply because it was an informant who requested him to do so. Tribbett v. State, 394 So.2d 878 (Miss. 1981). Indeed, a large proportion of such convictions arise from undercover law enforcement use of informants. By his own testimony, Ealy twice sold crack cocaine to the undercover officer after first procuring it from others. Ealy knew where to get the drugs and did so within a matter of minutes. However, Ealy admitted only to being a user of crack cocaine, not a seller of it. In fact, in his testimony on direct examination, he denied ever selling the drug or having enough to sell.
¶ 12. Ealy's sole defense in this case was that he believed he was acting as a confidential informant for the Bureau of Narcotics. This belief was said to have been fostered by Agent Nichols, who Ealy said arranged a meeting with him earlier to discuss becoming an informant. Ealy testified that Nichols told him that the Bureau had information on him and that he could work for the Bureau as an informant to get rid of the potential charges.
Q. Did he kind of put it to you that he wanted you to help him make cases againstdid you understand what being a confidential informant was?
A. Yes. He made it plainly clear to me what I would have to do, and, you knowand to turn theseto turn these people up, or whatever the case may be, and then, he would take these charges, or whatever he had against me, and do away with them, if I helped him, and I took it in a way that I was working with him. At least, to my knowledge, I was trying.
After their meeting, Ealy said he tried to contact Nichols later to discuss the arrangement.
¶ 13. Agent Nichols admitted at trial that he met with Ealy and offered him the opportunity to work as a confidential informant.
Q. Well, what was your agreement that you had with him, if there was an agreement?
A. There was another violation that had been committed, and I told him that, if he worked, carrying one of our agents around to people who he's getting his drugs from, then, we might could work with him on the charges. I told him that that would be left up to the District Attorney's Office to decide, in the end.
Q. Okay. Did he want to do that?
A. He indicated, at first, initially, that he did, yes, sir.
Q. Okay. If he was going to do that, what would be the next step, or how did ya'll leave it that would be the next step for him to become an informant, if he wanted to be one?
A. He would have to contact me. I wasn't going to run him down to give him an opportunity to work, but, if he wanted to work, he could contact us and we'd set up a meeting, just like we do in all cases, and, probably, on the first time, send him somewhere by himself to see if he wanted to make a purchase from somebody.
Q. Did you provide him with means to contact you, if he wanted to?
A. Pager number and telephone number, yes, sir.
Q. Okay. Did he ever contact you again, after that meeting, about becoming a confidential informant?

*1058 A. Further down the road, on one occasion, I believe he did page me. I talked to him, but nothing ever came out of that.
¶ 14. In addition, Ealy testified that he knew his friend Joe Dennis was working with the Mississippi Bureau of Narcotics as a confidential informant. Ealy stated that Dennis had asked him to help him work off his own drug charges. The help needed included giving Dennis names of drug dealers, their addresses, and other information. To Ealy, this request was similar to what Agent Nichols acknowledges that he asked Ealy to do. On the day of the offense, Ealy testified that the informant Dennis came into his house and told him he was working that day with an undercover agent:
He said that he was there with one, and he said that he wanted me to help him so that he could getwell, like I said a few seconds ago, so he couldjust whatever dope charge, or whatever kind of charge it was, they would take this off of him.
¶ 15. We must decide if this is sufficient evidence to create a jury question. Ealy testified that Dennis that day asked Ealy to assist in an undercover buy. Ealy stated and Nichols admitted in his testimony that Nichols had previously asked Ealy about working as an informant. If the jury believed Ealy's testimony, he reasonably believed that this plan was coming to fruition at the time of the offense for which he was tried and that was the only reason he sold these drugs.
¶ 16. The testimony may not have been believed, but Ealy did lay out evidence that he was responding to a governmental inducement. We turn to the second factor to complete the analysis.

II. Lack of Predisposition
¶ 17. Regardless of whether a specific incident might have elements of governmental inducement, there must also be no predisposition to commit the offense. In one precedent, the defendant made a related claim. The accused argued that the confidential informant had asked for his help, calling repeatedly and stating that he was in trouble and needed Ervin to cooperate with him in a sale to narcotics officers. Ervin v. State, 431 So.2d 130 (Miss. 1983). Ervin was not entitled to an entrapment instruction merely because the defendant was "asked to sell the substance and he was caught." Id. at 134. The court said, "Ervin knew where to get marijuana, had the means to obtain it, and did so to his detriment." Id. The confidential informant in Ervin had previous dealings with the accused, including arranging at least twice for a friend to buy marijuana from Ervin. Id. at 132. In the present case, the only relevant testimony was that Ealy would at times buy cocaine for himself and the informant Dennis to use together, and Dennis would pay him back for his portion. Dennis also stated that occasionally Ealy already had some cocaine that he sold him when he asked.
¶ 18. Ealy was an admitted addict, which meant that he knew where to find drugs when necessary and occasionally had some that he was able to sell to Dennis without going out to buy more. Whatley and Dennis each testified that it took only minutes for Ealy to locate crack cocaine and procure it for them. Without a doubt, buying and using cocaine was Ealy's frequent activity. There is no evidence that Ealy had a practice of selling drugs. In fact, the sole evidence that Ealy ever had previously sold drugs could be taken by the jury solely to be on a reimbursement basis for the informant Dennis. It is not necessary that the State prove Ealy made a profit. It is necessary once entrapment is raised for the State to prove that all it did was provide another customer to a willing seller. The nature of Ealy's few past sales at least creates a jury question on that point.
¶ 19. Moreover, an overly broad reading of Ervin would mean that once evidence is introduced that an accused had ever previously *1059 sold drugs, he would be guilty even if the State admitted that they had reached an understanding on this occasion for him to make a sale as their agent. Prior sales cannot cancel out all other evidence. In fact, the confidential informant himself would be guilty of the crime of possessing the drugs despite all witness's agreement that he was working for the State, if it could be shown the he had a predisposition to possess and use drugs. Only prosecutorial discretion would then prevent his prosecution for engaging in the very acts that the undercover drug enforcement team told him to perform. That cannot be the meaning of Ervin. The only difference here is the level of certainty that Ealy could be said to have that the State wished for him to do this.
¶ 20. The fact that one of the State's witnesses confirmed part of what Ealy alleges makes this a stronger entrapment case than many. Despite that, it is also relevant that an accused is entitled to have an instruction on his theory of the case if there is foundation in evidence, even though the evidence might be weak, insufficient, inconsistent, or of doubtful credibility, and even though the sole testimony in support of the defense is the defendant's own testimony. Welch v. State, 566 So.2d 680, 684 (Miss.1990). This is especially important when, as here, it is the accused's only defense:
However, in refusing the proposed instruction that embodied Giles' only defense, the trial court denied the defendant the only opportunity he could have had for the jury to consider his sole theory of defense. Accordingly, Giles' conviction must be reversed, his sentence vacated and his case remanded for a new trial.
Giles v. State, 650 So.2d 846, 855 (Miss. 1995).
¶ 21. We do not find unchallenged evidence "that the intent to commit the crime already existed in the mind of the accused" and that the State merely provided an opportunity to commit an act that he was ready and willing to perform. King v. State, 530 So.2d 1356, 1358 (Miss.1988). Such an act requires a criminal intent, the very intent that Ealy testified he did not have based on an understanding that Agent Nichols wanted him to participate in undercover transactions and Dennis's alleged request that day to assist in a buy.
¶ 22. The jury should have been allowed to consider the defense. The jurors could easily have rejected the evidence. When instead the court rejected the instruction, Ealy was denied his only defense. We must reverse.
¶ 23. THE JUDGMENT OF SCOTT COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
McMILLIN, C.J., KING, P.J., IRVING, LEE, MONROE, AND THOMAS, JJ., CONCUR.
BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY PAYNE, J.
BRIDGES, J., dissenting:
¶ 24. With respect to the majority's decision to reverse the conviction of Troy Ealy, I disagree that the application of available case law to his situation leaves this Court with a proper basis to do so. I am concerned with the reasoning and case law presented in the majority's opinion that discuss Ealy's predisposition for selling crack cocaine. Believing that the record provides ample evidence of Ealy's predisposition to conduct the precise illicit exchange that transpired on the evening in question, I dissent.
¶ 25. Citing Hopson and Moore, the majority correctly articulates the elements necessary for Ealy to establish a prima facie case of entrapment. Specifically, the majority notes that the "presence of inducement and the absence of predisposition must both be shown." Two of the three transactions seemed to be a matter *1060 of course for Ealy. Joe Dennis approached him and needed crack. He gave money to Ealy who then procured the crack from another source and returned it to Dennis. Dennis testified that prior to this occasion, he and Ealy smoked crack together on a semi-regular basis. He further testified that ordinarily, he would furnish Ealy with the money and Ealy would return from one of several places he frequented with crack for each to use. Moreover, Dennis testified that occasionally, Ealy had enough crack to sell him without venturing to parts unknown.
¶ 26. Later at trial, Ealy testified that Dennis wanted to know where he bought the crack. Ealy's response truly defines predisposition:
Q. Did they want you to go buy from Charles? Did Joe mention anything about going to buy from Charles?
A. Yes. When I was talking to Joe, he saidjust as me and Mark got through talking, he said: Troy, you're going to get this from Charles, right? I said, "Yeah." He knew where I was going to get it from, because he had me go and purchase it for him I don't know how many times.

(emphasis added).
¶ 27. The Mississippi Supreme Court explained entrapment by calling it the act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him in its commission and prosecuting him for the offense. Avery v. State, 548 So.2d 385, 387 (Miss.1989). The Avery Court made an important distinction regarding entrapment, saying a defendant is not entrapped when he is already predisposed to commit the crime and when law enforcement officials merely furnish him the occasion or opportunity for doing so. Tanner v. State, 566 So.2d 1246, 1248 (Miss.1990) (citing Avery v. State, 548 So.2d at 387).
¶ 28. The record reflects that Ealy was predisposed to sell crack to Dennis. Dennis, working with a narcotics officer, purchased crack from Ealy, as he had done many times before. He was ready and willing to sell Dennis crack and knew where to get it on short notice. As the majority notes, a defendant is entitled to an instruction on entrapment once a prima facie case is presented. Walls v. State, 672 So.2d 1227, 1230 (Miss.1996). In Walls, the appellant was asked to sell a controlled substance and he was caught while doing so. The Court noted that no one coerced or otherwise forced him to deliver the substance to the State agent. Walls, 672 So.2d at 1231. Further, the Walls Court held that simply being asked to sell a controlled substance and getting caught was not an automatic ground to get an entrapment instruction and held that the necessary prima facie case was not established. Id. at 1231 (citing Ervin v. State, 431 So.2d 130, 134 (Miss.1983)). I see no reason to grant special circumstance to Ealy on this particular transaction. I believe that the entrapment instruction was properly withheld for failure by the defense to make out a prima facie case.
Therefore, I would affirm.
PAYNE, J., JOINS THIS SEPARATE OPINION.