518 So.2d 656 (1988)
Tony KEMP, Ray S. Collins, Houston Collins and Jeffrey J. Curtis
v.
STATE of Mississippi.
No. 57141.
Supreme Court of Mississippi.
January 6, 1988.
Carroll Rhodes, Hazlehurst, for appellants.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., and Kay B. Cobb, Jackson, for appellee.
EN BANC.
SULLIVAN, Justice, for the Court:
The appellants were convicted by the Circuit Court of Copiah County, Mississippi, of conspiracy to possess more than one (1) kilogram of marijuana with intent to distribute. Each appellant was fined $20,000.00 and sentenced to a term of six (6) years in the custody of the Mississippi Department of Corrections. Each appeals assigning as one of their errors that the trial court should have granted their motion for a directed verdict and for a peremptory instruction at the end of the State's case.
We reverse and discharge the appellants on the authority of Barnes v. State, 493 So.2d 313 (Miss. 1986).
The facts in this case present the classic reverse sting operation carried on by the Mississippi Bureau of Narcotics in June of 1983 against Barnes. The same agents using the same vehicles carried out the exact same reverse sting in May of 1983 against the appellants here.
We repeat for the edification of narcotics officers throughout the State of Mississippi that the rule in Mississippi as laid out in Barnes, supra, is that a reverse sale or a reverse undercover operation as termed by the officers in that case and in this case embraces all the elements and requirements *657 for the definition of entrapment. Entrapment in this case was established as a matter of law by the State's own proof and the defense is valid against a charge of conspiracy to possess marijuana. See Barnes v. State, 493 So.2d 313, 316 (Miss. 1986).
REVERSED AND APPELLANTS DISCHARGED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON, and ZUCCARO, JJ., concur.
HAWKINS, P.J., and GRIFFIN and ANDERSON, JJ., dissent.
GRIFFIN, Justice, dissenting:
With deference, I respectfully dissent.
On May 16, 1983, Houston Collins spoke to an undercover agent of the Mississippi Bureau of Narcotics (MBN) at the C & T Liquor Store in Hazlehurst. According to Collins, the agent asked him if he knew anyone who would be interested in the purchase of two forty-pound bales of marijuana. Collins answered, "No, not at this time. You reckon I can get a couple of pounds?" When the agent said that he had to sell the whole thing, Collins stated, "Maybe I can tell you something tomorrow." The agent then asked, "Well, do you think you can come up with any money?" Collins responded, "I don't know; I'll have to talk to my partner," adding, "I believe I can come up with about $8,000 for forty pounds." This account is consistent with the agent's testimony that Collins agreed to make a purchase during the first fifteen seconds of their conversation.
On May 18, 1983, Collins, accompanied by Tony Kemp, and followed in another car by Jeffrey Curtis and Ray Collins, Houston's brother, met MBN agents at the T.G. & Y. parking lot in Hazlehurst. According to the agents, Kemp cut open a bale of marijuana, stored in an unmarked MBN van, commenting on the substance's quality. Upon request, Kemp then showed the agents a green bank bag, which contained $10,000, the agreed on price for one bale.
MBN agents asked to make the exchange at the Copiah Creek Water Park on Highway 28, a pre-arranged location where other law enforcement officers had hidden in anticipation of the transaction. Upon their arrival, Kemp and Curtis weighed the bale, stating that the marijuana was not Red Bud, a variety of the plant, but definitely was Columbian. As Houston Collins gave the agents the green bank bag, Kemp lifted the bale and Curtis opened the trunk; the officers, identifying themselves, then arrested the four appellants.
At trial, Kemp, Curtis and Ray Collins denied any participation in the crime, each claiming that he was unaware of the bale's contents. Yet, on cross-examination, Houston Collins stated, "I'm not saying that I'm not guilty of it, Mr. Lampton. I'm guilty of it."
In McLemore v. State, 241 Miss. 664, 675, 125 So.2d 86, 91 (1960), this Court defined entrapment as the "act of inducing or leading a person to commit a crime not originally contemplated by him, for the purpose of trapping him in its commission and prosecuting him for the offense." See also, Howard v. State, 507 So.2d 58, 61 (Miss. 1987), Tribbett v. State, 394 So.2d 878, 881 (Miss. 1981), Jones v. State, 285 So.2d 152, 155 (Miss. 1973). Similarly, Wharton's Criminal Law, Sec. 52 (4th ed. 1978) reads in part: "When a law enforcement officer or his agent induces a normally law-abiding person to commit a crime, so that evidence may be obtained for his prosecution, and, but for the inducement, the crime would not have been committed, the defense of entrapment is made out."
Law enforcement officers though do not entrap a defendant, when they merely provide an opportunity to violate the law. McCormick v. State, 279 So.2d 596, 597 (Miss. 1973), Hogan v. State, 233 So.2d 786, 788 (Miss. 1970), McLendon v. State, 247 Miss. 510, 512, 153 So.2d 711, 712 (1963). Rather, for entrapment, criminal intent simply must not originate in the mind of the accused, but elsewhere; or stated otherwise, the accused must not have been predisposed to commit the crime. Pace v. State, 407 So.2d 530, 532 (Miss. 1981). See *658 also, Ervin v. State, 431 So.2d 130, 134 (Miss. 1983), Turner v. State, 415 So.2d 689, 693 (Miss. 1982), Laughter v. State, 235 So.2d 468, 471 (Miss. 1970), Miller v. State, 234 So.2d 297, 301 (Miss. 1970). Indeed, where the intent to "commit the crime already existed in the mind of the accused, so that the indictment merely served to give him an opportunity to commit that to which he was already disposed, the entrapment defense does not lie." Phillips v. State, 493 So.2d 350, 354 (Miss. 1986).
In the case at issue, the majority relies upon Barnes v. State, 493 So.2d 313 (Miss. 1986), in support of its decision to reverse the appellants' convictions. The record in Barnes reflects that an informant contacted Oscar Bell, asking if he knew anyone, including Bell himself, who would be interested in the purchase of four bales of marijuana. The informant, acting on behalf of the MBN, had previously purchased Valium through Bell. According to Bell, he declined to purchase the marijuana. Yet, when the informant called a second time, Bell stated that he had mentioned the marijuana to an individual, and was awaiting a response. Bell had also told David Barnes. The next day, Barnes went to Bell's house, wanting to "look into it." Over the telephone, the informant and Barnes agreed to meet. At their first meeting, Barnes, accompanied by Bell and a third man, Michael Williams, inspected the marijuana; Williams told Barnes and Bell that the marijuana was of good quality. Later in the evening, they returned with a green bank bag, containing two bundles of money. Shortly thereafter, the police arrested the three, following an automobile chase. To say the least, Barnes is distinguishable from the case here in that delivery was never made. Barnes became frightened and left.
On these facts, the Court ruled that a "`reverse sale' or `reverse undercover operation' ... embraces the requirements and definition for `entrapment'," especially noting "overwhelming evidence of the efforts at entrapment, including ownership of the marijuana... ." Id. at 316. Significantly, the Court cited no authority for the proposition that a reverse sale constituted entrapment as a matter of law.
Instead, the Court cited a series of cases involving narcotics supplied to the defendant by an informant or drug agent and subsequently sold or given by the defendant to a drug agent. These cases are wholly distinguishable from the facts at issue. For example, in Jones, 285 So.2d at 153, an informant asked the defendant to sell marijuana on the informant's behalf, since the informant was supposedly indebted to the purchaser, an undercover MBN agent, and feared that he would not receive payment. Properly, the Court reversed the conviction. In Torrence v. State, 380 So.2d 248, 249 (Miss. 1980), the Court faced a similar factual situation and properly reversed the conviction.
Likewise, in Sylar v. State, 340 So.2d 10, 11 (Miss. 1976), an undercover MBN agent asked the defendant to deliver a package of marijuana to another undercover MBN agent. When the defendant finally consented, he promptly delivered the proceeds paid by the supposed buyer to the supposed seller. Properly, the Court reversed the conviction.
In Epps v. State, 417 So.2d 543, 544 (Miss. 1982), an informant asked the defendant to keep a quantity of cocaine until the informant's girlfriend came to retrieve it. The girlfriend and an undercover police officer later returned, and the defendant gave them the cocaine. Properly, the Court reversed the conviction.
In Daniels v. State, 422 So.2d 289, 291 (Miss. 1982), an informant gave the defendant a bag of assorted pills, "that you could not be arrested for," as security for a two hundred dollar loan. When the informant repaid the defendant, the defendant returned the pills to the informant. Properly, the Court reversed the conviction.
Finally, in Tribbett, 394 So.2d at 879, an informant telephoned the defendant to arrange the purchase of marijuana. When the defendant arrived, an undercover MBN agent purchased nine bags of the substance. Properly, the Court upheld the conviction.
*659 These cases bear no similarity to the factual scenario either in Barnes or in the case at issue. Most certainly, these cases do not outlaw a reverse sale of narcotics to individuals, who otherwise display a predisposition to commit the crime.
In Barnes, 493 So.2d at 315, quoting Tribbett, 394 So.2d at 882, the Court stated,
The usual entrapment case which arises under Mississippi law involves a confidential informant or police officer who originates the sale of contraband by supplying it to the accused, who then, acting in complicity with the confidential informant or police officer, sells or disposes of it to another officer or person who initiates the prosecution.
Obviously, the Court quoted the passage for its reference to an informant or undercover agent, who supplies an accused with contraband. Yet, this alone is not determinative of entrapment. Entrapment occurred in the cases cited above only when the informant or undercover agent instigated the sale and subsequent purchase. These are not the facts here. In this case, the MBN agent, who asked Houston Collins if he knew anyone who would be interested in the purchase of marijuana, merely provided him with an opportunity to violate the law  a valid law enforcement technique often found in "sting" operations. Significantly, the criminal intent originated solely with Collins: "You reckon I can get a couple of pounds?"
In short, I find no distinction between an undercover purchase of illegal drugs, upheld in Tribbett, and an undercover sale of illegal drugs, where there is a predisposition to commit the crime.
Other jurisdictions, which have considered the issue, approve the use of so-called "reverse stings," despite claims of entrapment.
In United States v. Henthorn, 815 F.2d 304 (5th Cir.1987), an undercover federal narcotics officer, posing as a drug dealer, arranged for an informant to make an introduction to the defendant. At their meeting, the defendant agreed to purchase forty-five kilos of cocaine. The Fifth Circuit upheld the conviction. See also United States v. Nixon, 777 F.2d 958 (5th Cir.1985), United States v. Stanley, 765 F.2d 1224 (5th Cir.1985).
In United States v. Castro, 776 F.2d 1118 (3rd Cir.1985), undercover federal narcotics agents, posing as drug dealers, arranged the sale of large quantities of marijuana to the defendants. The Third Circuit upheld the convictions.
In United States v. Sayers, 698 F.2d 1128 (11th Cir.1983), an informant told the police that the defendant wished to purchase and distribute a large quantity of marijuana. Undercover federal narcotics agents then made a deal to sell the substance. The Eleventh Circuit upheld the conviction.
In State v. Buffington, No. 85-291-III, slip op. (Tenn. Crim. App. decided November 5, 1987) an undercover police officer sold four bales of marijuana to the defendants. The Tennessee Court of Criminal Appeals upheld the convictions.
In State v. Gessler, 142 Ariz. 379, 690 P.2d 98 (Ariz. Ct. App. 1984), an informant told police that the defendant wanted to buy a large quantity of marijuana. After the informant introduced the parties, an undercover agent sold the defendant one hundred pounds of the substance. The Arizona Court of Appeals vacated the lower court's dismissal of the charges, founded on entrapment.
In State v. Bass, 451 So.2d 986 (Fla. Dist. Ct. App. 1984), the defendants contacted an informant, seeking to purchase marijuana. The informant then told the police, who, in turn, sold the substance to the defendants. The Florida District Court of Appeals reversed the lower court's dismissal of the charges, founded on entrapment.
In Curtis v. State, 172 Ga. App. 473, 323 S.E.2d 684 (Ga.Ct.App. 1984), an undercover agent met with the defendant, even providing the defendant with a small sample of marijuana, prior to his purchase of two pounds. Although the Georgia Court of Appeals reversed the conviction on the basis of an improper jury instruction, the Court found that the agent's activities "did *660 not violate [the defendant's] constitutional right to due process." Id. at 474, 323 S.E.2d at 686.
In Harrison v. State, 442 A.2d 1377 (Del. 1982), a prison inmate contacted a guard as part of a corruption investigation, asking the guard to telephone a drug dealer on his behalf. The guard contacted the dealer, who was in fact an undercover state police officer, and purchased marijuana for the inmate. The Delaware Supreme Court upheld the conviction, stating, "To hold that the conduct of the State Police in this matter was overreaching and injurious to the defendant's due process right would be to deprive our law enforcement officers of an effective tool for stamping out crime, and we decline to do so." Id. at 1387.
In People v. Cross, 77 Ill.2d 396, 33 Ill. Dec. 285, 396 N.E.2d 812 (1979), an informant, unaware that undercover federal narcotics agents were coming to his house, departed, leaving heroin with the defendant. When the agents arrived, the defendant sold the heroin to the agents. The Illinois Supreme Court upheld the conviction, stating, "The offense in question here is the unlawful delivery of a controlled substance and, although the government may have supplied the substance, the critical inquiry is whether the `criminal purpose' of selling these substances originated with the defendant." (emphasis in the original)
In People v. Duke, 87 Mich. App. 618, 274 N.W.2d 856 (Mich. Ct. App. 1978), prison inmates and a guard were pressuring another inmate to obtain drugs through his wife. She contacted the warden, who notified the state police. An undercover police officer, posing as the wife, then delivered heroin to the guard. The Michigan Court of Appeals reversed the lower court's dismissal of the charges, founded on entrapment.
Finally, in State v. Rowan, 32 Ohio App.2d 142, 144, 288 N.E.2d 829, 831 (1972), where the defendant appealed his conviction, arguing that the police lacked authority to sell marijuana, the Ohio Court of Appeals held that the law permitted the "delivery and sale of drugs to others, when the purpose of such conduct is to ferret out the illegal drug trade, and bring to justice those engaged in it."
Significantly, in these cases, the courts focus not on the agent's sale of narcotics, but on the defendant's predisposition to commit the crime. Further, West's Decennial Digest does not reveal that any jurisdiction other than ours holds that the facts here constitute entrapment as a matter of law. The cases all hold that the State must be on both ends, the sale and purchase. Not on one end, as here.
At this juncture, I feel compelled to point out that the narcotics agents of this state, both State and local, receive very little money for the enforcement of narcotics laws other than that for necessary expenses and salaries. It is doubtful that the sums received are sufficient to catch the majority of the lowly street peddlers who stroll around offering these sales.
Sizeable sums of cash are always a good lure for a crook, and some that might not be predisposed to criminalty; another attractive bait for the big fish is the contraband. Cash comes from the honest taxpayer; contraband from illegal activity. It appears to me that societal need is better served by allowing those predisposed to criminally to furnish bait.
The appellants first mentioned entrapment in their motion for a new trial. There was no mention of entrapment in their motion for a directed verdict nor in any jury instruction, either granted or refused.
In most cases, the Court has held that a defendant cannot deny a criminal act and claim entrapment. Howard, 507 So.2d at 62, Pace, 407 So.2d at 532, McCormick, 279 So.2d at 597, Reeves v. State, 244 So.2d 5, 6 (Miss. 1971), Hogan, 233 So.2d at 788. Logic dictates such a rule. The Court has also held that entrapment is an affirmative defense, which presents a question of fact to the jury. Howard, 507 So.2d at 63, Tribbett, 394 So.2d at 881, Ainsworth v. State, 304 So.2d 656, 657 (Miss. 1974), Boone v. State, 291 So.2d 182, 185 (Miss. 1974), Smith v. State, 248 So.2d 436, 438 (Miss. 1971), Averitt v. State, 246 Miss. 49, 63, 149 So.2d 320, 326 (1963). Moreover, the State must rebut uncontradicted evidence *661 of entrapment. Daniels, 422 So.2d at 292; Epps, 417 So.2d at 545, Torrence, 380 So.2d at 249, Hamilton v. State, 295 So.2d 739, 740 (Miss. 1974), Jones, 285 So.2d at 159.
Had this Court determined that a reverse sale was not entrapment as a matter of law, as I suggest, the appellants would have waived their right to appeal on this ground, since they failed to request jury instructions or otherwise assert the defense before the jury. In addition, Kemp, Curtis and Ray Collins now improperly maintain both their innocence and their entrapment.
Yet, even if the appellants had offered evidence of entrapment and requested a proper jury instruction, the State provided ample evidence, proving a predisposition to commit the crime. For example, (1) Houston Collins immediately agreed to the sale, even mentioning a partner, (2) Houston Collins was aware of the marijuana's value, commenting that $12,000 for forty pounds was "a little bit too steep," (3) Houston Collins was previously convicted of selling marijuana, (4) Kemp commented on the bale's quality, (5) Kemp and Curtis expressed familiarity with varieties of marijuana, and (6) there was absolutely no evidence that the undercover MBN agents exerted any pressure on the appellants.
Other jurisdictions have found such evidence sufficient to rebut an entrapment defense. Mack v. State, 457 N.E.2d 200, 203 (Ind. 1983), State v. Bernard, 441 So.2d 817, 820 (La. Ct. App. 1983), State v. Sokos, 426 So.2d 1044, 1045 (Fla. Dist. Ct. App. 1983), People v. Stallings, 83 Ill. App.3d 533, 537, 39 Ill.Dec. 77, 80, 404 N.E.2d 461, 464 (1980), State v. Matheson, 363 A.2d 716, 723 (Me. 1976), People v. Van Alstyne, 46 Cal. App.3d 900, 907, 121 Cal. Rptr. 363, 367 (1975).
Drug dealers represent the basest element of our society. They prey upon the young and imprudent, destroying their physical and emotional health, futures, and reputations, while causing untold heartache to their families and friends. Consequently, this Court should encourage every law enforcement effort against these dealers, consistent with our laws.
In Turner, 415 So.2d at 693, the Court stated that the entrapment doctrine was "not applied as a matter of constitutional right but as a court created limitation on governmental activity." (emphasis added). As noted, other courts uphold the use of reverse sales, similar to that employed by MBN agents in this case. It is truly unfortunate that the majority now withholds this weapon from Mississippi's law enforcement arsenal. Indeed, as the majority holds, drug dealers, known to purchase narcotics, even in large quantities, cannot be approached by undercover agents, since any sale to the dealer would constitute entrapment.
In summation, I believe that the reverse sale is not entrapment as a matter of law. Rather, under the facts of each case, it is for the jury to determine, except, of course, under the factual situation of Jones, supra, and its progeny. This was the law before Barnes and should be the law now.
I would affirm.
HAWKINS, P.J., and ANDERSON, J., join this opinion.