STATE of Minnesota, Respondent,

v.

Russell E. JAMES, Appellant.

No. C7–91–1206.

Court of Appeals of Minnesota.

April 28, 1992.

Review Denied June 30, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

William R. Kennedy, Hennepin County Public Defender, James Kamin, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and FORSBERG and MULALLY, JJ.

## OPINION

MULALLY, Judge.[*]

This appeal from a conviction for possession of cocaine raises a due process challenge to a reverse sting operation. Appellant James was given a deferred disposition, Minn.Stat. § 152.18 (1990), and therefore was not "sentenced" for purposes of finality of the judgment. *See* Minn. R.Crim.P. 28.02, subd. 2(1). However, this court granted discretionary review. We affirm.

---

[*] Retired judge of the district court, acting as judge of the Court of Appeals by appointment

## FACTS

Appellant Russell James was arrested in Minneapolis following a transaction in which he bought two "rocks" of crack from a police undercover officer. The undercover officer testified he was standing by the fence in front of a house known for heavy drug trafficking. The officer was carrying a bag containing individually wrapped chunks of crack. A search warrant had been executed earlier at the residence, clearing out any previous drug trafficking activity.

The undercover officer testified that a man he identified as appellant James walked up to him and asked if he was "holding." Taking this as street jargon for selling crack, the undercover officer told him that he was. James then asked if he could buy two for $35. He inspected the "rocks" of crack, and rejected them. When the officer showed him two different "rocks," James accepted. James then handed $35 to the officer, who turned over the two "rocks," gave the "bust signal," and James was arrested.

James gave a statement to police in which he said he was arrested "because he had attempted to purchase drugs." He admitted he used "crack" occasionally. James had no prior cocaine-related arrest, conviction or other incident. James was charged with fifth degree controlled substance offense, possession of cocaine.

James moved to dismiss the charge, on the grounds that the "reverse sting" operation violated due process. The trial court held extensive hearings on the issue.

Police testified that the "reverse sting" program was designed to reduce street-level demand for "crack" in neighborhoods in which the police were receiving community complaints about extensive drug trafficking. The program was intended to disrupt the drug activity by discouraging "users" from approaching certain areas to buy. The police would first "clear the area" by obtaining a search warrant for a

pursuant to Minn.Const. art. VI, § 2.

known "crack" house and conducting a search. Police undercover officers then posed as dealers, without trying to recruit buyers or to steer passersby to them. Police did not target individuals suspected of using crack, but only "sold" to those who approached them.

James presented the testimony of two treatment professionals stating that a "reverse sting" is not an effective technique to reduce the demand for drugs. James also presented the testimony of former Minneapolis Chief of Police Anthony Bouza, who testified that a reverse sting program blurred the boundaries between legal and illegal conduct, diverted police from their legitimate goal of preventing crime, and presented a serious problem for police themselves because it required them to illegally possess cocaine.

The "reverse sting" program was conducted at eight locations. Although police hoped the program would discourage "white suburbanites" from coming into the city to buy drugs, the arrestees were 87% black.

The trial court denied the motion to dismiss, applying the four factors identified in *People v. Isaacson*, 44 N.Y.2d 511, 406 N.Y.S.2d 714, 719, 378 N.E.2d 78, 83 (1978).

James waived his right to a jury trial. The prosecution and defense agreed to submit the case to the court based on stipulated facts. The trial court found James guilty, and he was sentenced to two years probation, without an entry of a judgment of conviction, under Minn.Stat. § 152.18.

### ISSUES

1. Does the street-level "reverse sting" program violate due process?

2. Was the evidence sufficient to prove appellant was not entrapped?

### ANALYSIS

*1. Due Process*

The due process defense for government overinvolvement in the criminal conduct charged was explored in *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), in which a plurality of the Court recognized the possibility that government conduct may require dismissal of the charge even where the defendant was predisposed to commit the offense. Justice Powell stated:

> Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction.

*Id.* at 495 n. 7, 96 S.Ct. at 1653 n. 7 (Powell, J., concurring).

The *Hampton* opinions, while leaving open a due process defense, furnished "no clear guidelines to be applied by the lower courts." Note, "Due Process Defense When Government Agents Instigate and Abet Crime," 67 Geo.L.J. 1455, 1459 (1979). Justice Powell, however, indicated that police overinvolvement would be especially difficult to show in narcotics and other contraband prosecutions. *Hampton*, 425 U.S. at 495 n. 7, 96 S.Ct. at 1653 n. 7.

We must distinguish the single, relatively simple two-way street-level transaction involved here from more complex undercover operations. The Superior Court of Pennsylvania, in rejecting a due process challenge to a single sale of cocaine by a police informant to the defendant, has noted:

> The few appellate decisions in which government conduct has been found to violate due process have generally involved long term police involvement in the establishment and operation of ongoing criminal enterprises.

*Commonwealth v. Benchino*, 399 Pa.Super. 521, 582 A.2d 1067, 1071 (1990) (citations omitted). In *United States v. Twigg*, 588 F.2d 373, 376 (3rd Cir.1978), the government's agents suggested to defendants the creation of a drug laboratory, and provided the equipment and supplies, as well as the expertise. The court found this involvement violated the due process rights of one of the defendants.

A typical undercover scenario involves a police informant furnishing narcotics to a defendant for sale to an undercover officer. *See, e.g., United States v. West*, 511 F.2d 1083, 1086 (3rd Cir.1975) (finding a due process violation). This scenario involves

significantly more government contact with the defendant than does the street-level reverse sting at issue here. Nevertheless, the *Hampton* court declined to find entrapment or a due process defense where the government both supplied the contraband and bought it from the defendant. *Hampton*, 425 U.S. at 489–90, 96 S.Ct. at 1649–50.

The street-level "reverse sting" here was a very simple operation in which an undercover officer waited for drug purchasers to solicit him, then had them arrested after the transaction for possession of the drug. The only other state case James cites which involves this scenario is *Kemp v. State*, 518 So.2d 656 (Miss.1988), in which the court held entrapment was proved as a matter of law where the undercover officer actively solicited a sale of 40 pounds of marijuana, then arrested the defendants for possession when they took control of the bale. In *Kemp*, however, the officer approached one of the defendants and pressed him for an answer as to whether he would buy. *Id.* at 657 (Griffin, J. dissenting). Moreover, the same officer had been involved in a similar sting earlier ruled illegal. *Id.* at 656.

In *People v. Wesley*, 224 Cal.App.3d 1130, 274 Cal.Rptr. 326, 333 (1990), *pet. for rev. denied* (Cal. Jan. 17, 1991), a due process challenge to a reverse sting much like that involved here was rejected. The court stated:

> Unlike [more complex undercover cases cited] the "reverse sting" operation here provided little opportunity for contact between police and defendant. Officer Qualls, a street decoy, simply provided the opportunity to commit the crime; defendant took the bait and was immediately arrested.

*Id.* As in the present case,

> [a]ll [the undercover officer] did was to make himself available at a location where there was an ongoing street dealing problem in the neighborhood. The police did not engage in criminal or improper conduct repugnant to a sense of justice, such as physical abuse by police

or imposition or coercion or resort to sympathy.

*Id.*

The trial court applied the four-factor test of *People v. Isaacson* to this case. The *Isaacson* analysis asks:

> (1) whether the police manufactured a crime which otherwise would not likely have occurred, or merely involved themselves in an ongoing criminal activity.
>
> (2) whether the police themselves engaged in criminal or improper conduct repugnant to a sense of justice.
>
> (3) whether the defendant's reluctance to commit the crime is overcome by appeals to humanitarian instincts such as sympathy or past friendship, by temptation, of exorbitant gain, or by persistent solicitation in the fact of unwillingness.
>
> (4) whether the record reveals simply a desire to obtain a conviction with no reading that the police motive is to prevent further crime or protect the populace.

*Isaacson*, 406 N.Y.S.2d at 719, 378 N.E.2d at 83.

We agree with the trial court's conclusion that police did not "manufacture" a crime. By going undercover in front of a known "crack" house police were merely involving themselves in an ongoing criminal activity. While it was not an activity in which each arrestee was already demonstrably involved, the due process issue focuses on the conduct of the police, not the defendant.

It is clear that police did not overcome James' reluctance by improper means. Moreover, we agree with the court in *Wesley* that the reverse sting tactic is not "repugnant to a sense of justice," and that

> the police motive was not simply to obtain a conviction of anyone, but to rid the area of street trafficking and help return neighborhoods that then belonged to the drug trade, to the citizens, an appropriate law enforcement technique.

*Wesley*, 274 Cal.Rptr. at 333.

James proposes a due process standard consisting of ten factors addressing the fairness of the police tactic. However,

some of these factors are more relevant to policy decisions than to definitions of "outrageous conduct." Judges are not permitted to impose personal notions of fairness on police under the guise of due process. *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2049, 52 L.Ed.2d 752 (1977).

The great weight of authority is against James' due process challenge to the street-level "reverse sting" operation. It is significant that much of the case law outlawing "reverse stings" involves undercover operations far more complex than the present one. Moreover, even that case law is cast into considerable doubt by the Supreme Court's rejection of the due process defense on facts showing extensive government involvement in *Hampton*. *See Hampton*, 425 U.S. at 489–90, 96 S.Ct. at 1650.

### 2. *Entrapment*

James argues that the state did not prove beyond a reasonable doubt that he was predisposed to purchase crack. He relies primarily on his lack of any prior record of cocaine-related incidents. However, James admitted to police that he used crack occasionally. Moreover, he took the initiative in approaching the officer standing outside a notorious crack house, used appropriate jargon in negotiating a sale, and even inspected and rejected the first two "rocks" offered him.

Minnesota's "subjective" theory of entrapment focuses on predisposition of the defendant. *State v. Grilli*, 304 Minn. 80, 91, 230 N.W.2d 445, 453 (1975). Predisposition may be shown by "defendant's active solicitation to commit the crime." *Id.* at 89, 230 N.W.2d at 452. There is no evidence that the undercover officer signalled James that he was selling crack, or otherwise lured or induced him into buying. The evidence is sufficient to establish predisposition.

### DECISION

The "reverse sting" operation did not violate James' right to due process. The evidence is sufficient to establish a lack of entrapment.

Affirmed.

