STATE of Minnesota, Respondent,

v.

Betsy Lou BURKLAND, Appellant.

No. A08–1784.

Court of Appeals of Minnesota.

Nov. 24, 2009.

Lori Swanson, Attorney General, St. Paul, MN; and Susan L. Segal, Minneapolis City Attorney, Jennifer Saunders, Assistant City Attorney, Minneapolis, MN, for respondent.

Jeffrey C. Dean, Jeffrey Dean Law Firm, Minneapolis, MN, for appellant.

Considered and decided by WRIGHT, Presiding Judge; STONEBURNER, Judge; and STAUBER, Judge.

## OPINION

WRIGHT, Judge.

This appeal arises from appellant's conviction of misdemeanor prostitution, a violation of Minn.Stat. § 609.324, subd. 3 (2006). Appellant argues that the investigating officer engaged in outrageous government conduct in violation of the due-process guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Section 7, of the Minnesota Constitution. Appellant also argues that the evidence was insufficient to support her conviction. We reverse.

## FACTS

After receiving a tip that prostitution was occurring at Peaceful Image Tanning and Bodyworks, the Minneapolis Police Department conducted an undercover investigation in which an officer, in plain clothes and with a recording device hidden in his clothing, posed as a customer. Upon entering the establishment, the undercover officer was greeted by appellant Betsy Lou Burkland with whom he arranged a one-hour massage for $70. Burkland took the officer to a room, asked him to disrobe, and left the room while he did so. After she returned and began the massage, Burkland offered to perform the massage topless for an additional $30. The officer accepted the offer.

The massage lasted for approximately one hour, during which Burkland and the officer engaged in small talk. The conversation included the following discussion about the recent arrest of women who were engaged in prostitution:

[BURKLAND]: There was an article in the Star & Trib . . .

[OFFICER]: Uh huh.

[BURKLAND]: About a month ago about these immigrants, illegal immigrants, that were coming in and doing sex for 200 and . . .

[OFFICER]: Oh really?

[BURKLAND]: They could barely speak English. 100 buck and (inaudible).

. . . .

[BURKLAND]: See, that's what you got to watch for. Honestly. I mean I got scared when I read the article, just working here and it's like, I realized what it was.

. . . .

[BURKLAND]: I have to have a real comfortable customer to even get comfortable and get nude with, you know? I don't think I'll have to worry about that. And now sure, (inaudible) you know, they're having a horrible situation in their country and they figure they would come to America and they know how to serve men. You don't have to speak to serve a man and please a man and make him happy.

Burkland then discussed the benefits of massage and the stigma attached to it, stating that "it's actually a . . . thing with a happy ending, it does release, release endorphins in your brain." After discussing the establishment's hours, the collapse of the Interstate 35W bridge, and the weather, Burkland directed the officer to turn onto his back and continued the massage. Shortly thereafter, the officer asked, "Do

you think I can touch your breasts now?" Burkland replied, "Um hmm." The officer massaged Burkland's bare breasts as she put oil on her hand and rubbed the officer's penis. The officer then asked, "Do you include the release with the 100 dollars?" Burkland responded, "Yeah." The officer then asked for additional sexual services if he put on a condom, which Burkland declined to perform. The officer testified that the word "condom" was the signal for other officers to enter and make the arrest. The officer also testified that "manual release" is a term used during massage to indicate that the masseuse will "give you a hand job until you have an orgasm."

Burkland was charged with misdemeanor prostitution, a violation of Minn.Stat. § 609.324, subd. 3, and gross misdemeanor prostitution in a public place, a violation of Minn.Stat. § 609.324, subd. 2 (2006). Burkland moved to dismiss the charges, arguing that the officer's outrageous conduct violated the right to due process. The district court denied the motion, and the case proceeded to trial. The jury found Burkland guilty of misdemeanor prostitution and not guilty of gross misdemeanor prostitution in a public place. This appeal followed.

### ISSUE

Did the officer engage in outrageous government conduct in violation of the right to due process?

### ANALYSIS

■ Burkland argues that her conviction must be reversed because the officer's actions were outrageous and, therefore, a violation of the due process guaranties of

the United States and Minnesota constitutions. Whether a constitutional violation has occurred presents a question of law, which we review de novo. *State v. Bobo*, 770 N.W.2d 129, 139 (Minn.2009).

■ The due process rights guaranteed by the United States and Minnesota constitutions protect individuals against abusive governmental action. U.S. Const. amend. XIV; Minn. Const. art. I, § 7. "[T]he concept of fundamental fairness inherent in the due process requirement will prevent conviction of even a predisposed defendant if the conduct of the government in participating in or inducing the commission of the crime is sufficiently outrageous." *State v. Morris*, 272 N.W.2d 35, 36 (Minn.1978) (citing *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)); *see also United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973) (recognizing due process defense when police conduct violates "fundamental fairness, shocking to the universal sense of justice" (quotation omitted)). But this type of due process protection is implicated only when police overinvolvement reaches a "demonstrable level of outrageousness." *Hampton*, 425 U.S. at 495 n. 7, 96 S.Ct. at 1653 n. 7 (Powell, J., concurring).

■ The Minnesota Supreme Court has twice analyzed similar due process challenges in appeals from prostitution convictions.[1] In *Morris*, the defendant argued that the undercover officer's conduct in exposing himself at her insistence was outrageous. 272 N.W.2d at 35–36. Rejecting this argument, the *Morris* court held that government conduct must "reach a demonstrable level of outrageousness be-

---

1. Because the due process provisions of the United States and Minnesota constitutions are identical, we interpret them as coextensive. *See McCollum v. State*, 640 N.W.2d 610, 618

(Minn.2002) (stating that due process guaranteed by Minnesota Constitution is identical to that guaranteed by the United States Constitution).

fore it could bar conviction," and conduct in which the officer exposed himself to the target of the prostitution investigation only after she insisted that he do so to demonstrate that he was not a police officer was not "either unlawful or sufficiently outrageous to bar defendant's conviction." *Id.* at 36. Applying the *Morris* court's rationale in *State v. Crist*, the Minnesota Supreme Court held that an undercover police officer did not violate the right to due process when, in order to gain evidence sufficient to arrest the defendant for prostitution, the officer complied with the defendant's demand that the officer expose himself before she would negotiate a price. 281 N.W.2d 657, 658 (Minn.1979).

The state urges us to employ the factors that we enumerated in *State v. James*, 484 N.W.2d 799, 802 (Minn.App.1992), *review denied* (Minn. June 30, 1992), rather than the rationale articulated in *Morris* and *Crist*, to determine whether the police conduct at issue here violates due process. *James* involved a controlled-substance investigation in which we considered the following factors:

(1) whether the police manufactured a crime which otherwise would not likely have occurred, or merely involved themselves in an ongoing criminal activity[;]

(2) whether the police themselves engaged in criminal or improper conduct repugnant to a sense of justice[;]

(3) whether the defendant's reluctance to commit the crime is overcome by appeals to humanitarian instincts such as sympathy or past friendship, by temptation, of exorbitant gain, or by persistent solicitation in the face of unwillingness[; and]

(4) whether the record reveals simply a desire to obtain a conviction with no reading that the police motive is to prevent further crime or protect the populace.

*Id.* (citing *People v. Isaacson*, 44 N.Y.2d 511, 406 N.Y.S.2d 714, 378 N.E.2d 78, 83 (1978)). We decline to do so because the nature of a controlled-substance investigation differs significantly from that of a prostitution investigation. An illegal drug sale is similar to an ordinary commercial transaction, except that it involves an illegal substance. A sex-for-money exchange involving intimate activities on the part of the buyer and seller is quite different. Therefore, the *James* factors are not directly applicable here.

In *Morris* and *Crist*, the supreme court identified the legal standard for a prostitution investigation such as the one at issue here. Specifically, whether officer conduct in a prostitution investigation is sufficiently outrageous to violate due process is determined by the nature of the officer's conduct and whether the conduct is justified by the need to gather evidence sufficient to arrest the target of the investigation for the offense.

Burkland was convicted of misdemeanor prostitution, a violation of Minn.Stat. § 609.324, subd. 3. To determine whether the officer's conduct was justified by the need to gather sufficient evidence, we consider the elements of the offense. Prostitution is defined as "engaging or offering or agreeing to engage for hire in ... sexual contact." Minn.Stat. § 609.321, subd. 9 (2006). Thus, the evidence needed to prove this offense is that Burkland "agree[d] to engage for hire" in sexual contact.

In both *Morris* and *Crist*, the actions taken by undercover officers were held not to constitute outrageous government conduct because the officer's conduct was in response to the defendant's demand, and the demand was a means used by the defendant to avoid police detection. *Morris*, 272 N.W.2d at 35; *Crist*, 281 N.W.2d at 658. That is not what occurred in this

case. Here, the officer initiated the sexual contact when he asked to touch Burkland's breasts and proceeded to do so. He permitted Burkland to rub his penis while continuing to massage Burkland's bare breasts and inquired whether a "release" was included in the $100 cost. Thus, the facts of the case are distinguishable from those in *Morris* and *Crist* in several important respects. First, there is no evidence in the record, nor did the officer contend, that Burkland's conduct was necessary to dispel a suspicion that he was a police officer. Second, Burkland made no demands of the officer to detect whether he was a police officer. Third, there is no evidence that the officer considered it necessary for the collection of evidence to initiate sexual contact by asking to touch Burkland's breasts or permitting her to rub his penis in order to gain her confidence. Police investigation is important in prosecuting and reducing the incidence of prostitution. But the officer could have successfully sought the necessary agreement to engage in sexual contact for hire by inquiring about the charge for the "release" at almost any point throughout the almost hour-long massage without ever initiating sexual contact by touching Burkland's breast. Thus, unlike the facts of *Morris* and *Crist*, the officer's initiation of sexual contact and assent to the escalation of that contact was unnecessary to any reasonable investigation and offensive to due process.[2]

We conclude that when a police officer's conduct in a prostitution investigation involves the initiation of sexual contact that is not required for the collection of evidence to establish the elements of the offense, this conduct, initiated by the investigating officer, is sufficiently outrageous to violate the "concept of fundamental fairness inherent" in the guarantee of due process. *Morris*, 272 N.W.2d at 36.

In light of our decision, we need not reach Burkland's challenge to the sufficiency of the evidence.

## DECISION

Because, in this prostitution investigation, the government engaged in outrageous conduct in violation of the guarantees of due process in the United States and Minnesota constitutions when the investigating officer initiated and permitted the escalation of sexual contact that was unnecessary to any reasonable investigation, appellant's conviction is reversed.

**Reversed.**

---

2. We observe that at least one foreign jurisdiction has affirmed a prostitution conviction when the government conduct was arguably more invasive than that involved here. *See State v. Tookes*, 67 Haw. 608, 699 P.2d 983, 985–87 (1985) (holding that civilian government agent who engaged in sexual intercourse with subjects of investigation did not violate due process). But Minnesota's jurisprudence has developed in a manner that is not consistent with such a holding. We analyze the facts and circumstances here applying the standards established by the Minnesota Supreme Court. Moreover, although the *James* factors advocated by the state are largely inapplicable in the prostitution-investigation context, the second factor, "whether the police themselves engaged in criminal or improper conduct repugnant to a sense of justice," supports our conclusion that outrageous government conduct was committed here. *See James*, 484 N.W.2d at 802.