# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3374

_____

Jose Refugio Gomez-Gutierrez

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

No. 14-3734

_____

Jose Refugio Gomez-Gutierrez

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 22, 2015
Filed: January 29, 2016
_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.
_____

RILEY, Chief Judge.

In these consolidated petitions for review, Jose Refugio Gomez-Gutierrez, a native and citizen of Mexico who obtained lawful permanent resident status in the United States as a child, seeks review of two decisions of the Board of Immigration Appeals (Board). The first affirmed the decision of an immigration judge (IJ) finding Gomez-Gutierrez removable as an alien convicted of two separate crimes involving moral turpitude under § 237(a)(2)(A)(ii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(ii). The second denied his "Motion to Reconsider or Reopen Notwithstanding his Removal from the United States." We deny the consolidated petitions for review.

## I.    BACKGROUND

Gomez-Gutierrez was admitted to the United States in 1968 at age five; he was the son of a lawful permanent resident. On October 22, 2013, the United States Department of Homeland Security (DHS) initiated removal proceedings against Gomez-Gutierrez as a deportable alien convicted of two separate crimes involving moral turpitude. See 8 U.S.C. § 1227(a)(2)(A)(ii). The government ultimately charged Gomez-Gutierrez with removability based on a 1983 California marijuana conviction and a 2006 Minnesota solicitation of prostitution conviction. Gomez-Gutierrez only challenges the use of the solicitation conviction.

On September 27, 2006, Gomez-Gutierrez was convicted of soliciting prostitution in violation of Minn. Stat. § 609.324, subd. 2 (2006), which, at the time,

criminalized "solicit[ing] or accept[ing] a solicitation to engage for hire in sexual penetration or sexual contact while in a public place."[1]  Gomez-Gutierrez pled guilty to solicitation in connection with his agreement to purchase oral sex from an undercover police officer posing as a prostitute.  As part of the plea agreement, a Minnesota court stayed adjudication of Gomez-Gutierrez's case to enable him to enter a diversion program, which he successfully completed.  On October 2, 2008, the court dismissed the solicitation charge.

On March 13, 2014, Gomez-Gutierrez moved to terminate removal proceedings, arguing (1) he did not have a solicitation "conviction" as defined in 8 U.S.C. § 1101(a)(48)(A); and (2) solicitation under Minn. Stat. § 609.324, subd. 2, was not categorically a crime involving moral turpitude.  On April 10, 2014, the IJ found Gomez-Gutierrez was removable as charged.  With respect to solicitation, the IJ concluded the plea transcript established Gomez-Gutierrez was convicted for purposes of § 1101(a)(48)(A) despite the state-court stay and subsequent dismissal. The IJ further ruled the Minnesota solicitation statute satisfied the mens rea requirement for a crime involving moral turpitude and solicitation was categorically such a crime because "there [wa]s not a realistic probability that the offense would be used to reach non-turpiduous [sic] conduct."[2]

Gomez-Gutierrez appealed the IJ's decision to the Board.  He again argued solicitation under Minnesota law was not categorically a crime involving moral turpitude, providing examples he contended showed a realistic probability Minnesota courts applied the solicitation statute to conduct that did not involve moral turpitude.

---

[1]As the IJ noted, the statute was amended in 2009.  See 2009 Minn. Laws, ch. 170, § 2.  References to the statute are to the 2006 version.

[2]The IJ alternatively determined Gomez-Gutierrez's offense involved moral turpitude under the modified-categorical approach.  The Board did not reach the IJ's alternative holding, and the parties agree that issue is not before us.

The Board upheld the IJ's decision. DHS removed Gomez-Gutierrez to Mexico on September 30, 2014.[3]

Gomez-Gutierrez timely petitioned this court to review the dismissal and concurrently filed a "Motion to Reconsider or Reopen Notwithstanding his Removal from the United States" with the Board. See 8 U.S.C. § 1229a(c)(6), (7); 8 C.F.R. § 1003.2(b)(1), (c)(1). We granted Gomez-Gutierrez's motion for a stay pending a decision by the Board.

Arguing his motion before the Board, Gomez-Gutierrez complained the Board failed to consider the case examples Gomez-Gutierrez believed showed Minnesota courts applying the solicitation statute to conduct lacking moral turpitude. Gomez-Gutierrez also submitted five news articles he argued demonstrated sufficient categorical overbreadth to warrant reopening his case.

On November 28, 2014, the Board denied Gomez-Gutierrez relief, concluding he raised "the same or similar [unpersuasive] arguments" as on appeal. The Board also faulted Gomez-Gutierrez for "attempting to raise new arguments related to his solicitation conviction." Gomez-Gutierrez timely petitioned for review of the Board's denial. We consolidated the petitions for review under 8 U.S.C. § 1252(b)(6).

---

[3]Under 8 C.F.R. § 1003.2(d), "[a] motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of exclusion, deportation, or removal proceedings subsequent to his or her departure from the United States." The Board has decided "the so-called 'departure bar'" rule of § 1003.2(d) may—in certain circumstances—limit its jurisdiction to hear motions to reconsider or reopen from a noncitizen who is no longer in the United States. In re Armendarez-Mendez, 24 I. & N. Dec. 646, 648, 660 (BIA 2008). But see, e.g., Toor v. Lynch, 789 F.3d 1055, 1056-57 (9th Cir. 2015) (joining "every other circuit that has addressed" the issue in holding "the regulatory departure bar invalid irrespective of how the noncitizen departed the United States"). The Board has not invoked the departure bar in this case, and we do not consider it.

-4-

## II. DISCUSSION

### A. Moral Turpitude

An alien convicted of "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct" is removable under 8 U.S.C. § 1227(a)(2)(A)(ii). Gomez-Gutierrez argues the Board erred in concluding his solicitation conviction qualified as a crime involving moral turpitude. Although we generally lack "jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense . . . covered by section 1227(a)(2)(A)(ii)," we have jurisdiction to "review . . . constitutional claims or questions of law" raised in Gomez-Gutierrez's petitions for review. 8 U.S.C. § 1252(a)(2)(C), (D).

Whether Gomez-Gutierrez's solicitation conviction qualifies as a crime involving moral turpitude is a legal question, subject to de novo review. See Lateef v. DHS, 592 F.3d 926, 929 (8th Cir. 2010). In analyzing that question, we afford substantial deference to the Board's interpretation of ambiguous statutory language in the INA and will uphold its construction if it is reasonable. Id.

"When the Government alleges that a state conviction qualifies as" a crime involving moral turpitude under § 1227(a)(2)(A)(ii), "we generally employ a 'categorical approach' to determine whether the state offense is comparable to" the listed federal offense. Moncrieffe v. Holder, 569 U.S. ___, ___, 133 S. Ct. 1678, 1684 (2013). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense 'necessarily involved facts equating to [the] generic [federal offense].'" Id. (second and third alterations in original) (quoting Shepard v. United States, 544 U.S. 13, 24 (2005) (plurality opinion)).

"An alien's actual conduct is irrelevant to the inquiry, as the adjudicator must 'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." Mellouli v. Lynch, 575 U.S. ___, ___, 135

S. Ct. 1980, 1986 (2015) (quoting Moncrieffe, 569 U.S. at ___, 133 S. Ct. at 1684). But "our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" Moncrieffe, 569 U.S. at ___, 133 S. Ct. at 1684-85 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)).

"Congress has not defined the phrase 'crime involving moral turpitude.'" Chanmouny v. Ashcroft, 376 F.3d 810, 811 (8th Cir. 2004). In the absence of a statutory definition, the Board has defined the phrase as follows:

> "Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude."

Id. at 811-12 (quoting In re Ajami, 22 I. & N. Dec. 949, 950 (BIA 1999) (per curiam)). "[A]n offense must have two essential elements to constitute a crime involving moral turpitude: a culpable mental state and reprehensible conduct." In re Medina, 26 I. & N. Dec. 79, 82 (BIA 2013). The Board "has long viewed prostitution-related crimes as morally turpitudinous." Florentino-Francisco v. Lynch, 611 F. App'x 936, 938 (10th Cir. 2015) (non-precedential decision) (listing cases).

Applying this well-established definition, the Board upheld the IJ's determination that solicitation of prostitution under § 609.324, subd. 2, "categorically constitute[d] a crime involving moral turpitude." The Board rejected Gomez-Gutierrez's argument that the statute lacked "the requisite element of scienter"

because the Board concluded "the word 'solicit' in the statute implies an intentional act." The Board further reasoned, "even if an unintentional solicitation could be imagined, as the Immigration Judge held, a moral turpitude determination is not based on 'theoretical possibilities.'"

Gomez-Gutierrez challenges the Board's decision, arguing solicitation is not categorically a crime involving moral turpitude because "the least culpable conduct in solicitation of prostitution at the time of [his] conviction does not involve moral turpitude." In Gomez-Gutierrez's view, "there is a realistic probability that Minnesota applied its solicitation statute to cases that lacked the necessary degree of scienter or reprehensible conduct." We are not convinced.

Gomez-Gutierrez relies on State v. Burkland, 775 N.W.2d 372, 376 (Minn. Ct. App. 2009), to show "the minimum conduct prosecuted under Minn. Stat. § 609.324, subd. 2, . . . does not involve moral turpitude because [a masseuse] rejected [an undercover] officer's explicit request for sex yet still faced criminal liability." In Burkland, the masseuse did decline to perform additional sexual services after the officer offered to put on a condom, but only after the masseuse offered to perform the massage topless for $30 more, agreed to let the officer touch her bare breasts, and "put oil on her hand and rubbed the officer's penis," telling him "the release," as the officer called it, was included in the $100 price. Id. at 373-74. Burkland is not evidence of criminal prosecution in the absence of moral turpitude.

Gomez-Gutierrez's reliance on State v. Kelly, 379 N.W.2d 649 (Minn. Ct. App. 1986), is likewise misplaced. In Kelly, a health-club attendant negotiated a price for oral sex and sexual intercourse with an undercover officer and retrieved a condom but "became suspicious" when the officer told her he would have to get the money from his car. Id. at 651. The defendant "told the officer that he would not have to worry about money because she liked him" and "they would have sex together" and make each other "happy." Id. When the defendant began to disrobe, "the officer feigned

embarrassment," left the health club, and summoned other officers to arrest the defendant for prostitution. Id.

On appeal from her prostitution conviction, the defendant argued she could not be guilty of prostitution because she withdrew her offer of sex for money. Id. at 652. Noting "the mere offer of sexual services [wa]s a crime" under Minnesota law, the appeals court upheld the prostitution conviction because the "criminal act was complete when [the defendant] offered sexual services for pay." Id.

Gomez-Gutierrez, citing 1 [Richard A. Lord], Williston on Contracts § 5:8 (4th ed. [2007]) and going a step further than the defendant in Kelly, argues the defendant's withdrawal of her offer of sex for money and subsequent offer to have sex for free not only nullified the illicit offer, but also washed her prior conduct of immorality. As Gomez-Gutierrez sees it, Kelly shows Minnesota prosecutes for solicitation of prostitution without "reprehensible conduct" and without "the required degree of scienter to constitute a conviction for a" crime involving moral turpitude. Gomez-Gutierrez's analysis of Kelly is wholly unpersuasive. His other examples fare no better.

Because Gomez-Gutierrez failed to establish a realistic probability Minnesota courts would apply § 609.324, subd. 2, to crimes that did not involve moral turpitude, the Board did not err in deciding Gomez-Gutierrez's solicitation conviction constituted a crime involving moral turpitude.

### B. Motion to Reconsider or Reopen

When the Board denied Gomez-Gutierrez relief on September 22, 2014, he filed a motion to reconsider or reopen his case. See 8 U.S.C. § 1229a(c)(6), (7); 8 C.F.R. § 1003.2(b)(1), (c)(1). "'A motion to reconsider contests the correctness of the original decision based upon the previous factual record.'" Mshihiri v. Holder, 753 F.3d 785, 789 (8th Cir. 2014) (quoting In re O-S-G-, 24 I. & N. Dec. 56, 57 (BIA

2006)). "A motion to reconsider must identify 'errors of fact or law in the prior Board decision and shall be supported by pertinent authority.'" Id. (quoting 8 C.F.R. § 1003.2(b)(1)). The motion "must give the [Board] 'a reason for changing its mind, something the tribunal has no reason to do if the motion merely republishes the reasons that had failed to convince the tribunal in the first place.'" Sukhov v. Gonzales, 403 F.3d 568, 570 (8th Cir. 2005) (quoting Strato v. Ashcroft, 388 F.3d 651, 655 (8th Cir. 2004)).

"[A] motion to reopen 'seeks a new hearing based on new or previously unavailable evidence.'" Mshihiri, 753 F.3d at 789 (quoting In re O-S-G-, 24 I. & N. Dec. at 57-58). Such motions "are disfavored because they undermine the government's legitimate interest in finality." Guled v. Mukasey, 515 F.3d 872, 882 (8th Cir. 2008). The Board

> may deny a motion to reopen if the movant fails to present new, previously unavailable evidence; if the movant does not establish a prima facie case of eligibility for the desired relief; or if the [Board] determines "that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief sought."

Xiu Ling Chen v. Holder, 751 F.3d 876, 878 (8th Cir. 2014) (quoting Habchy v. Gonzales, 471 F.3d 858, 867 (8th Cir. 2006)).

Unsatisfied with the depth of the Board's realistic-probability analysis, Gomez-Gutierrez complained in his motion that "[t]he Board failed to consider" Burkland and Kelly, which Gomez-Gutierrez maintained "demonstrate[d] a realistic probability that Minnesota prosecutes solicitation for non-morally turpitudenous [sic] conduct." Gomez-Gutierrez—attaching news articles dated between 1991 and 2011—proposed "additional cases confirm[ed] the categorical overbreadth" of Minnesota's solicitation statute. Based on three of those articles, Gomez-Gutierrez argued for the first time that Minnesota's past "prosecution of adult and juvenile sex trafficking victims

-9-

demonstrate[d] a realistic probability of non-categorical moral turpitude." Asserting Minnesota's "2013 Safe Harbor Act [for sex-trafficking victims] did not go into effect until August 1, 2014,"[4] Gomez-Gutierrez also claimed "new evidence" that Minnesota only then softened its stance toward sex-trafficking victims warranted reopening his case.

The Board denied Gomez-Gutierrez's motion, concluding Gomez-Gutierrez "largely raise[d] the same or similar arguments in the motion to reconsider as were raised in his prior appeal brief" and any "new arguments related to his solicitation conviction" were "not properly raised." In the end, the Board was "not persuaded that [Gomez-Gutierrez's] supplemental arguments affect[ed] the ultimate determination that his conviction categorically constitute[d] a crime involving moral turpitude."

We review the Board's "decision denying a motion to reopen and reconsider for an abuse of discretion." Guled, 515 F.3d at 882. The Board "abuses its discretion where it gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence." Id.

Gomez-Gutierrez asserts the Board abused its discretion by (1) failing to consider his "new evidence of a new law evincing categorical overbreadth which requires reopening"; (2) "conflating this new evidence as both 'new argument' and 'supplemental legal argument'"; and (3) "vaguely den[ying] the motion to reconsider" without specifying which arguments it rejected and why. According to Gomez-Gutierrez, the Board owed him more specific findings regarding realistic probability

_____

[4]In other places in his motion, Gomez-Gutierrez dated the "paradigm shift in law enforcement approaches toward victims of sexual exploitation" to the mid-2000s and the changes caused by the safe-harbor law to 2011.

and a more explicit analysis of his examples. Gomez-Gutierrez's arguments are unpersuasive.

The Board "'must consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.'" Omondi v. Holder, 674 F.3d 793, 800 (8th Cir. 2012) (quoting Averianova v. Holder, 592 F.3d 931, 936 (8th Cir. 2010)). The Board need not "'list every possible positive and negative factor in its decision' or . . . 'write an exegesis on every contention.'" Id. We will uphold the Board's decision as long as it has given "'reasons that are "specific" enough'" to enable us to "'perform the requisite judicial review'" and "'appreciate the reasoning behind the decision.'" Id. at 800-01 (quoting Singh v. Gonzales, 495 F.3d 553, 557 (8th Cir. 2007)).

In denying Gomez-Gutierrez's motion, the Board thoughtfully considered Gomez-Gutierrez's arguments and evidence, gave a rational explanation for its denial, and provided sufficient analysis to allow meaningful review. The Board undoubtedly could have said more to address Gomez-Gutierrez's specific claims, but "the Board is entitled to a presumption of regularity" and does not have "to mention every piece of evidence that it considered." Doe v. Holder, 651 F.3d 824, 831 (8th Cir. 2011). The Board did not abuse its discretion in concluding Gomez-Gutierrez's arguments did not warrant further review or a fuller explanation.

## III.   CONCLUSION
We deny the consolidated petitions for review.

_____